IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JANE ROE, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Case No. 4:19-cv-00179-ALM-KPJ |
| § | | *SEALED* |
| LEIGHTON PAIGE PATTERSON, in his § | | |
| Individual capacity, and SOUTHWESTERN § | | |
| BAPTIST THEOLOGICAL SEMINARY, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Amended Motion to Proceed Under a Pseudonym (the "Motion") (Dkt. 9). The Motion is *ex parte* because Defendants have not yet been served. Plaintiff seeks to proceed under the pseudonym of Jane Roe ("Roe") and seal her Original Complaint (the "Complaint") in order to protect her privacy. For the reasons explained below, the Court finds the Motion (Dkt. 9) is **GRANTED**.

### I. BACKGROUND

Plaintiff formerly attended Southwestern Baptist Theological Seminary ("SWBTS"), located in Fort Worth, Texas. *See* Dkt. 8 at 2. Plaintiff alleges she was sexually assaulted on multiple occasions on the SWBTS campus by John Doe ("Doe"), a fellow student who was also an SWBTS employee. *See id*. Plaintiff alleges that Defendant SWBTS and Defendant Leighton Paige Patterson ("Patterson"), President of SWBTS at the time of the alleged assaults, failed to take any action to protect Plaintiff from the assaults, and after the incidents were reported, their negligent and intentional actions resulted in additional harm to Plaintiff. *Id*. The Court refers to Patterson and SWBTS collectively as "Defendants." Plaintiff brings suit against Defendants for

1

negligence, public disclosure of private facts, intentional infliction of emotional distress, and gross negligence. *See* Dkt. 8 at 26–33.

Plaintiff began attending SWBTS in 2014, and chose to attend SWBTS because she believed the institution shared her "conservative Christian" views. *See* Dkt. 8 at 11. While attending, Plaintiff lived and worked on campus. *See id*.

In September of 2014, Plaintiff met John Doe ("Doe"), a seminary student who was employed as a plumber on campus. *See id*. In his role as a plumber, Doe was issued keys to all campus buildings, including Plaintiff's dormitory, where she lived and worked. *See id*. Plaintiff asserts that Doe began stalking her. *See id*. at 11–13. After some time, a professor was "informed of Doe's stalking behavior towards Roe," which Plaintiff asserts put the school on notice. *See id*. at 12. Plaintiff asserts that no action was taken by SWBTS following this report. *See* Dkt. at 13.

In October of 2014, Plaintiff asserts Doe raped her following a campus barbecue. *See* Dkt. 8 at 12. Plaintiff asserts Doe threatened her with a gun during the rape. *See id*. Plaintiff alleges Doe continued his abuse of her, including instances of strangling, repeated sexual assault, multiple additional instances of rape, "twice forcing [Plaintiff] to take the morning after pill," criticizing Plaintiff, harming Plaintiff such that she was repeatedly bruised, and threatening to harm or kill either Plaintiff or himself with a gun. *See* Dkt. 8 at 11–15. After Doe abruptly "lost interest" in Plaintiff, Plaintiff continued to fear for her safety, and hid from Doe when he entered Plaintiff's dormitory for his job as a plumber. *See id*. at 15. Plaintiff alleges Doe had access to Plaintiff's daily schedule, as well as that of her housemates, because it was publicly posted at the front desk of Plaintiff's dormitory. *See id*.

In April of 2015, Plaintiff alleges Doe raped her again at Horner House. *See id*. At that time, Doe "forcibly raped [Plaintiff] at gunpoint and [as a result, she] suffered bleeding from the

injuries she sustained for several months." Dkt. 8 at 16. Plaintiff alleges Doe raped her again the following day while he was working as a plumber. *See id*. At that time, Plaintiff alleges that "Doe took photographs of Roe during the assault and threatened he would post the photos on the internet if she said a word." *Id*.

Plaintiff alleges her "mental and physical health deteriorated as a result of the stalking and sexual assaults. She developed an eating disorder." *See* Dkt. 8 at 16. On August 15, 2015, Plaintiff emailed Defendant Patterson to inform him that a man was threatening her and her family. *See* Dkt. 8 at 16. Plaintiff alleges that in response to this email, Defendant Patterson scheduled a meeting with Plaintiff and several male members of SWBTS staff, in which "Patterson asked Roe humiliating questions about the assault, including whether Doe ejaculated and whether she had had her monthly period." *See id*. at 17. According to Plaintiff, "Patterson seemed to enjoy making Roe even more uncomfortable." *See id*. Plaintiff alleges "Patterson told her it was 'a good thing' that she had been raped, because the right man would not care if she was a virgin or not. . . . Patterson told Roe he was 'too busy' to deal with her report of rape[.]" *See id*.

Plaintiff asserts Defendants were aware of Doe's bad acts and violations of campus policies because: (1) prior to enrolling, Doe allegedly met with Defendant Patterson regarding his criminal history, at which time he was encouraged to "fish" for a wife at SWBTS; and (2) Doe openly kept firearms in his campus residence and vehicle, including boasting about them and showing them to other SWBTS employees. *See* Dkt. 8 at 10–15. Further, Plaintiff alleges "Patterson acknowledged that often families sent their sons to SWBTS for him to 'fix' them." *See* Dkt. 8 at 17.

Plaintiff reported the rape to the Fort Worth Police Department ("Fort Worth PD"). *See* Dkt. 8 at 17–18. Plaintiff asserts that Doe's room was searched and nine weapons were recovered, including firearms. *See id*. at 18. Plaintiff alleges Fort Worth PD "cautioned Patterson and directed

3

him to refrain from contacting Doe about the rape allegations since doing so could endanger [Plaintiff]" but Patterson contacted Doe anyway. *See* Dkt. 8 at 18–20. Additionally, in response to an email regarding how to address Plaintiff's assault, Plaintiff alleges that Patterson responded, "I have to break her down and I may need no official types there but let me see." *See* Dkt. 8 at 19.

Later, at a meeting purportedly held to address "a rift" between Plaintiff and an assistant professor, Patterson was present. *See* Dkt. 8 at 20. Plaintiff alleges the purported rift was never discussed, but rather that Patterson discussed Plaintiff's sexual assault in front of the assistant professor, despite Plaintiff's request that the assistant professor be excused to protect her privacy. *See id*. At this time, Plaintiff alleges Patterson accused Plaintiff of lying about both the assault and Doe's firearms, discussed nude photos of Plaintiff, and "threatened to 'unleash' lawyers on [Plaintiff's mother] if she dared question his leadership at SWBTS." *See id*. at 20–21.

Ultimately, Plaintiff withdrew from SWBTS. *See id*. at 22. Patterson was later removed from his post as President of SWBTS. *See id*. at 23. At the time Patterson was removed, Plaintiff alleges that "additional allegations of Patterson's wrongdoing surfaced—including his covering up a 2003 rape and misappropriating documents[.]" *See id*.

Following Patterson's termination, Plaintiff alleges that Sharayah Colter ("Colter"), a SWBTS student and wife of an SWBTS employee, published a blog releasing confidential information about Plaintiff, which was later republished by media outlets. *See* Dkt. 8 at 24. Plaintiff further alleges Patterson's attorney, Shelby Sharp, issued a press release on June 4, 2018, which "included more untruths aimed at discrediting [Plaintiff]." *See* Dkt. 8 at 24. These statements included allegations that Plaintiff made "false allegations of rape." *See* Dkt. 8 at 25.

Plaintiff asserts that she has consistently "sought to protect her identity" and "there are no allegations that she has given interviews to the press or otherwise participated in [the] media

4

coverage of this case." *See* Dkt. 9 at 4. However, Plaintiff asserts that information regarding Patterson's statement that he needed to "break her down" is widely posted on the internet. *See* Dkt. 8 at 23.

## II. <u>LEGAL STANDARD</u>

Rule 10 of the Federal Rules of Civil Procedure requires a party commencing a civil action to disclose his or her name in the complaint. *See* FED. R. CIV. P. 10(a) ("[i]n *266 the complaint the title of the action shall include the names of all the parties. . . ."); *see also Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979). Moreover, under Rule 17 of the Federal Rules of Civil Procedure, "[e]very action shall be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a); *accord W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir.2001). The Federal Rules of Civil Procedure do not include provisions for plaintiffs wishing to proceed anonymously. *See SMU*, 599 F.2d at 712; *see also Yocom*, 257 F.3d at 1172. Under certain special circumstances, however, courts have allowed plaintiffs to conceal their true identities when pursuing a lawsuit. *See SMU*, 599 F.2d at 712. Factors which courts have taken into consideration when determining whether to permit a plaintiff to proceed under a fictitious name include: (1) whether the plaintiff seeking anonymity is suing to challenge governmental activity; (2) whether prosecution of the suit compels the plaintiff to disclose information of the utmost intimacy; and (3) whether the plaintiff is compelled to admit her intention to engage in illegal conduct, thereby risking criminal prosecution. *See Stegall*, 653 F.2d at 185; *SMU*, 599 F.2d at 712–13. These factors, however do not form a "rigid, three-step test for the propriety of party anonymity." *Stegall*, 653 F.2d at 186.

Furthermore, a party need not prove all three factors to proceed anonymously. *Doe v. El Paso Cty. Hosp. Dist.*, 2015 WL 1507840, at *2 (W.D. Tex. 2015) (citing *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011); *Stegall*, 653 F.2d at 186). Courts have considered other circumstances, including whether plaintiffs would face threats of "violence or physical harm by proceeding in their own names, a party's age and related vulnerability, and any prejudicial impact on the defending parties." *See Stegall*, 653 F.2d at 186; *Frank*, 951 F.2d at 323–24. No single factor is dispositive, and a judge should "carefully review *all* the circumstances before deciding whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Frank*, 951 F.2d at 323 (emphasis in original).

### III. ANALYSIS

After carefully considering the facts in this case, the Court finds that Plaintiff should be permitted to proceed pseudonymously at this stage of litigation. First, considering the three-factor analysis set forth in *Stegall*, only the second factor, whether the suit would compel Plaintiff to disclose information of the utmost intimacy, applies in this case. *See Stegall*, 653 F.2d at 185. Under this factor, "[w]here the issues involved are matters of a sensitive and highly personal nature . . . the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." *SMU*, 599 F.2d at 712–13 (citation and internal quotations marks omitted). As one court observed, the crucial question is "how intimate and of what nature must the information be to trump the presumption of openness in judicial proceedings." *El Paso Cty. Hosp. Dist.*, 2015 WL 1507840, at *4. Cases involving matters such as birth control, abortion, and homosexuality have been deemed to involve information sufficiently sensitive and private to warrant anonymity. *SMU*, 599 F.2d at 712–13. Prayer and personal religious beliefs likewise involve issues of "utmost intimacy" sufficient to allow a party to proceed anonymously. *See*

6

*Stegall*, 653 F.2d at 186. Courts have also allowed parties to proceed anonymously in cases involving the sexual assault of the plaintiff. *El Paso Cty. Hosp. Dist.*, 2015 WL 1507840, at *4 (citing *Plaintiff B*, 631 F.3d at 1315–19; *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir.1997) ("[F]ictitious names are allowed when necessary to protect the privacy of . . . rape victims, and other particularly vulnerable parties or witnesses."); *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014); *EEOC v. Spoa, LLC*, 2013 WL 5634337, at *3 (D.Md. 2013); *Roe v. St. Louis Univ.*, 2009 WL 910738, at *3–5 (E.D. Mo. 2009); *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 196 (E.D.N.Y. 2006)); *contra Doe v. Compact Info. Systems, Inc.*, 2015 WL 11022761 (N.D. Tex. Jan. 26, 2015).

Upon review of the cases involving sexual assault, the Court finds *Cabrera* to be instructive in this case. In *Cabrera*, the court allowed the plaintiff, a victim of sexual assault, to proceed anonymously in a lawsuit against her alleged attacker, a professional baseball player. *See generally Cabrera*, 307 F.R.D. 1. Although applying its own five-factor test,[1] the first factor of the court's test (whether the use of a pseudonym will preserve privacy in a matter of a sensitive and highly personal nature) is nearly identical to the second *SMU* factor (whether prosecution of the suit compels the plaintiff to disclose information of the utmost intimacy). Upon consideration of this factor, the *Cabrera* court noted that sexual assault claims, by their nature, involve the disclosure of intimate details of sexual conduct, and further, noted that the plaintiff's privacy interests went beyond avoiding embarrassment and criticism. *Id*. at 5. As the court explained, protecting the

---

[1] The five factors are: (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously. *Cabrera*, 307 F.R.D. at 4 (citing *Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F.Supp.2d 90, 99 (D.D.C.2008)).

7

plaintiff's identity in this case was not merely to avoid humiliation, but also to protect the plaintiff's confidentiality and dignity and to prevent additional psychological harm. *Id*. at n.6.

Similar to *Cabrera*, this case involves detailed allegations of sexual assault. *See generally* Dkt. 8. The allegations set forth in the Complaint allege much more than a bare claim of assault; rather, the Complaint includes intimate details regarding the nature of the alleged multiple assaults Plaintiff suffered. Moreover, Plaintiff alleges that Defendants have previously discussed detailed information regarding the sexual assaults both in front of other members of the SWBTS staff and through public press releases and blog posts, despite Plaintiff's requests that her privacy be maintained. *See* Dkt. 8 at 24–25. Plaintiff also asserts she is concerned that because Defendants and their staff have posted publicly discussing private information about Plaintiff, Defendants may publicly share her identity and personal information after receiving service of this suit. *See id.*; *see also* Dkt. 9 at 4. Plaintiff has made no statements to the media or the public regarding her assault. Finally, Plaintiff asserts that she seeks to protect her identity not merely to avoid humiliation, but because she has suffered (and continues to suffer) physical and emotional injury, loss of self-esteem, disgrace, and humiliation, as well as spiritual suffering due to her devout Christian beliefs. *See* Dkt. 8 at ¶ 128; *see also id*. at ¶ 78–79 (reciting Plaintiff's belief that as a result of the assaults she was "damaged goods" and "no Godly man would ever want her"). Similar to the plaintiff in *Cabrera*, the Court finds that Plaintiff's privacy interests here go beyond simply avoiding embarrassment and humiliation. Rather, protecting Plaintiff's identity in this case at this time is necessary to protect Plaintiff's confidentiality and dignity and to prevent additional psychological harm.

The Court further finds that the Complaint includes the type of intimate facts described as worthy of protection in *SMU*. For example, the Complaint contains allegations of particular

sensitively, including that Doe required Plaintiff to use the morning after pill, a form of birth control, and that Patterson inquired after whether Plaintiff had started her period and whether Doe ejaculated. *See SMU*, 599 F.2d at 712–13 (noting that issues regarding birth control are of the type of intimate details that may warrant protection). Additionally, the Complaint includes facts regarding Plaintiff's deeply held religious convictions, as well as the theology of SWBTS. Accordingly, the Court finds that the second *SMU* factor, whether prosecution of the suit compels the plaintiff to disclose information of the utmost intimacy, weighs heavily in favor of allowing Plaintiff to proceed pseudonymously.

In addition to the *SMU* factors, the Court must consider all of the circumstances of the case. *See Frank*, 951 F.2d at 323 (citing *SMU*, 599 F.2d at 713). One such circumstance is the degree to which Plaintiff's name is already known to individuals in the community. *See Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 268 (E.D. Tex. 2007). In *Rose*, the court gave less deference to the plaintiff's privacy concerns "in light of" the plaintiff's involvement in the media coverage of the scandal underlying that lawsuit. *Rose*, 240 F.R.D. at 268. In *Cabrera*, the court expressed concern about a public statement the plaintiff made to the media after she filed her complaint "attempting to try her case in the media or gain a tactical advantage through their public statements." *Cabrera*, 307 F.R.D. at 9. The *Rose* court concluded that despite the plaintiff's statements to the media, the plaintiff's interest in maintaining her anonymity nevertheless remained a valid concern. *Id*.

The facts in this case differ from those in *Rose* or *Cabrera*. It appears that Plaintiff has sought to protect her identity even as Defendants have attempted to discredit her during SWBTS's proceedings regarding Patterson's employment. *See generally* Dkts. 8 and 9. Despite widespread media attention, including statements by Patterson directly attacking Plaintiff's credibility,

Plaintiff alleges she has not participated in any media coverage or interviews. *See* Dkt. 9 at 5; *see also Doe v. Dabbagh*, 2015 WL 13806540 (E.D. Mich. May 28, 2015) (allowing plaintiff to proceed under a pseudonym in a case against a human trafficker where plaintiff took precautions to prevent the use of her name publicly).

Permitting Plaintiff to proceed under a pseudonym will not prejudice or pose a threat of fundamental unfairness to Defendants, as they are already aware of the identities of Roe, Doe, and the witnesses described in the Complaint. Additionally, Plaintiff's assertion that she fears retaliatory physical harm from Doe weighs in favor of allowing Plaintiff to proceed anonymously at this stage. *See Cabrera*, 307 F.R.D. at 6–7; *Compact Info.*, 2015 WL 11022761, at 3. Granting Plaintiff's Motion with respect to proceeding under a pseudonym permits Plaintiff to proceed without exacerbating her fear that the suit itself will result in additional harm to her.

Finally, the Court examines all claims alleged by Plaintiff, which include a claim for public disclosure of private facts. *See* Dkt. 8 at 29. Public disclosure of private facts is a Texas state common law claim, which exists when a person gives publicity to matters concerning a plaintiff's personal life that would be highly offensive to a reasonable person of ordinary sensibilities and the matter publicized is not of legitimate concern to the public. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474 (Tex. 1995). While not dispositive, it is persuasive that Texas state courts have allowed plaintiffs bringing claims related to the disclosure of information that is sexual or intimate in nature to proceed pseudonymously. *See, for example, Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40 (Tex. App.—Corpus Christi-Edinburg 2001) (a case regarding videos involving nudity); *Star-Telegram*, 915 S.W.2d 471 (concerning sexual assault).

Accordingly, considering all of the circumstances in this case, and for the reasons set forth above, the Court finds that the customary practice of disclosing Plaintiff's identity should yield to

the specific privacy concerns raised in this matter. *See Frank*, 951 F.2d at 323. While anonymity is not necessary in all cases involving sexual assault, the Court finds that the specific facts involved in this case warrant anonymity at the pleading stage. As such, the Court **GRANTS** Plaintiff's request to proceed pseudonymously at this time and hereby **ORDERS** that all filers (attorneys, interested parties, etc.) shall use the pseudonym "Jane Roe" in place of Plaintiff's actual name and shall not include any personally identifying information of Plaintiff. However, the Court cautions Plaintiff that, as Defendants have not yet appeared in this matter, the Court may allow the parties to reopen this issue as litigation progresses. The Court further notes that if this case proceeds to trial, Plaintiff will likely not be allowed to use a pseudonym. *See Cabrera*, 307 F.R.D. at 10 (citing *E.E.O.C. v. SPOA, LLC*, 2013 WL 5634337 (D. Mar. Oct. 15, 2013); *Does I Thru XXIII v. Advanced Textile Corp.*, 2014 F.3d 1058, 1069 (9th Cir. 2000) ("We recognize that the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses.")).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion (Dkt. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that all filers (attorneys, interested parties, etc.) shall use the pseudonym "Jane Roe" in place of Plaintiff's actual name and shall not include any personally identifying information of the plaintiff.

**IT IS SO ORDERED**.

**SIGNED this 3rd day of June, 2019.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE