UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JANE ROE | § | |
| | § | |
| v. | § | CIVIL NO. 4:19-CV-179-SDJ |
| | § | |
| LEIGHTON PAIGE PATTERSON, | § | |
| ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jane Roe sued Defendants Southwestern Baptist Theological Seminary ("SWBTS") and the former SWBTS president, Leighton Paige Patterson, for various causes of action related to alleged sexual assaults suffered by Roe while she attended SWBTS and the alleged actions Defendants took in response to Roe's report of the assaults. Now pending before the Court are SWBTS's Motion to Dismiss, (Dkt. #171), and Patterson's Motion for Judgment on the Pleadings, (Dkt. #183). The Court, having reviewed the motions, the relevant briefing, and the applicable law, **GRANTS in part** SWBTS's motion and **GRANTS in part** Patterson's motion.

## I. BACKGROUND

SWBTS is a private non-profit institution of higher education and is one of the largest seminaries in the world. (Dkt. #8 ¶¶ 16, 19). Patterson served as SWBTS's president from 2003 until 2018. (Dkt. #8 ¶¶ 39, 110). According to her amended complaint, Roe enrolled as an undergraduate student at SWBTS in the fall of 2014 after being drawn to the school because of its commitment to conservative Christian beliefs. (Dkt. #8 ¶ 44). Roe alleges that, after her arrival on campus as a student and a student-employee, she became the victim of repeated stalking, physical abuse,

1

sexual abuse, and threats of violence towards herself and her family at the hands of John Doe, a seminary student and student-employee at SWBTS. (Dkt. #8 ¶¶ 48–75). As a student-employee, Doe worked as a plumber, which allowed him access to and knowledge of the buildings where Roe worked and lived. (Dkt. #8 ¶ 70).

Roe's detailed allegations regarding Doe's attacks include the following: he raped her in the building where she lived after forcing his way into the building and dragging her upstairs by her hair; Doe raped her in a bathroom where Roe had been sent to restock as part of her on-campus job while he was wearing his SWBTS plumber uniform and armed with a handgun; Doe sexually assaulted her after she fell asleep at a barbeque on campus; Doe took photographs of Roe during one of the rapes; and Doe twice forced Roe to take the "morning after pill" after raping her. (Dkt. #8 ¶¶ 55, 58, 70–72).

Doe informed Roe that before he was admitted to SWBTS, he had multiple sexual partners, abused drugs and alcohol, molested girls beginning in middle school, had an extensive criminal history, and had a violent past. (Dkt. #8 ¶¶ 51, 60, 61). Doe further stated that he had met personally with Patterson, who assured him that his past would not preclude him from becoming a Baptist minister. (Dkt. #8 ¶ 51). Patterson encouraged Doe to "fish" the pool of unmarried female students for a suitable wife. (Dkt. #8 ¶ 51).

Doe kept firearms openly in his campus residence and vehicle and loaded the guns with bullets in front of Roe to emphasize the seriousness of his threats, which included a repeated threat to "bury her in the Canadian soil" if she failed to do as he

asked. (Dkt. #8 ¶ 63–66). Doe talked about and showed Roe his guns during multiple attacks—once raping her at gunpoint. (Dkt. #8 ¶¶ 55, 71).

SWBTS policies strictly prohibited the possession of firearms unless authorized in advance by the president, Patterson. (Dkt. #8 ¶ 65). According to Roe, other SWBTS employees were aware that Doe had guns on campus, including a student-employee who worked in the Security Department of SWBTS and personally confirmed to Roe that he was aware that Doe had guns on campus. (Dkt. #8 ¶ 63). This same employee added that Doe told him that he ran from the police during drug and gang-related activities. (Dkt. #8 ¶ 66).

Roe alleged that Doe either "flagrantly violated" SWBTS's gun policy "with knowledge of at least one SWBTS security employee or was given permission to possess the weapons by Patterson." (Dkt. #8 ¶ 65). And Doe told Roe that if she ever "told on him" or "made anyone suspect anything was off," he "would be the first one to contradict her and he would be believed over her." (Dkt. #8 ¶ 67).

In September 2014, one of Roe's professors was informed of Doe's stalking behavior towards Roe, to which the professor's only response was to let Roe know that "the young man was welcome to come by and talk with [the professor] any time he wanted," but no other action was taken. (Dkt. #8 ¶ 53).

After April 2015, Roe told her family about the attacks, and on August 15, 2015, Roe emailed Patterson saying that she needed to speak with him immediately regarding "a serious situation about a young man who took advantage of me last semester on campus who is now seriously threatening our family." (Dkt. #8 ¶¶ 71–

3

76). Roe and her family then reported the events of the previous year to Patterson, who contacted the Fort Worth Police Department ("FWPD"). (Dkt. #8 ¶¶ 78–82). As part of Roe's mother's conversation with Patterson, he informed her that a background check is only done for employees, not students, and he acknowledged that families often send their sons to SWBTS for him to "fix" them. (Dkt. #8 ¶ 81).

After Roe's report, SWBTS officials went to Doe's campus residence and found nine weapons between his dormitory and his vehicle. (Dkt. #8 ¶ 83). Doe was then expelled based on his possession of the prohibited weapons. (Dkt. #8 ¶ 84).

Roe was scared to pursue charges against Doe because he had been armed and threatened Roe and her family with violence. (Dkt. #8 ¶ 85). The FWPD officers advised Roe that they understood her safety concerns, told her how to complete her written statement, and assured her she had time to decide whether she wanted to pursue a criminal complaint against him. (Dkt. #8 ¶ 85). On September 28, 2015, Patterson sent an email to SWBTS Chief of Campus Security, John Nichols, responding to an email from Nichols asking Patterson if Nichols should attend the next meeting with Roe. (Dkt. #8 ¶¶ 87–89). In his email, Patterson stated "Well we will see. I have to break her down and I may need no official types there but let me see." (Dkt. #8 ¶¶ 87–89). The referenced meeting occurred on October 8, 2015. The Roes believed the meeting was about a rift between Roe and a professor, Candi Finch. (Dkt. #8 ¶¶ 90–91). However, when Roe arrived, Patterson took control of the meeting and brought up Roe's rapes, thereby disclosing the sexual assaults to Finch. (Dkt. #8 ¶¶ 91–93). Patterson also refused Roe's request that Finch leave the meeting.

(Dkt. #8 ¶ 94). Patterson went on to accuse Roe of lying about the assaults and the firearms, stating that he had obtained a copy of her confidential police report. Patterson also stated that he had contacted Doe to get his side of the story—despite being told not to do so by FWPD—and accused Roe of sending nude photos to Doe. (Dkt. #8 ¶¶ 94–98). A week later, Roe withdrew from SWBTS. (Dkt. #8 ¶ 103). After learning that her police report had been disclosed to Doe, Roe moved out of the state with her family. (Dkt. #8 ¶ 106).

Several years later, in May of 2018, thousands of Baptist women signed a letter calling for Paterson's ouster from SWBTS, resulting in the SWBTS Board of Trustees convening. (Dkt. #8 ¶¶ 107–08). Ultimately, on May 30, 2018, Patterson was removed as SWBTS president. (Dkt. #8 ¶ 110). Following his removal, Roe alleges that various individuals associated with Patterson and/or SWBTS made statements, either through the media, blog posts, or published letters, regarding Roe that contained "confidential information about Roe without her consent," "untruths," and "false and defamatory statements." (Dkt. #8 ¶¶ 113–116).

## II. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a probability that the defendant is liable is not required, the plausibility standard demands "more than a sheer possibility. . . ." *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation omitted). Legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. To determine whether the plaintiff has pleaded enough to "nudge[] their claims across the line from conceivable to plausible," a court draws on its own "judicial experience and common sense." *Id.* at 679–80 (quoting *Twombly*, 550 U.S. at 570).

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Owens v. TransUnion, LLC*, No. 4:20-CV-665-SDJ-KPJ, 2021 WL 4451891, at *1 (E.D. Tex. Sept. 29, 2021).

### III. DISCUSSION

At the outset, the Court notes that federal courts sitting in diversity apply the substantive law of the forum state. *Wisznia Co., Inc. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). As a result, this Court will apply Texas law to Roe's claims.

In resolving issues of Texas state law, federal courts look to decisions of the Texas Supreme Court. *Hux v. S. Methodist. Univ.*, 819 F.3d 776, 780 (5th Cir. 2016). If that court has not ruled on the issue, the federal court must make what is known as an "Erie guess." In other words, it must predict what the Texas Supreme Court would do if faced with the facts currently before the federal court. *Id.* Generally, state intermediate courts' decisions are the strongest indicator of what a state supreme court would do. *Id.* at 780–81. Therefore, this Court will look to Texas Supreme Court and appellate court decisions when interpreting Texas law applicable to Roe's claims.

## A. SWBTS and Patterson's Statute-of-Limitations Arguments

SWBTS and Patterson argue that portions of Roe's negligence, gross negligence, intentional infliction of emotional distress ("IIED"), and public-disclosure-of-private-fact claims are untimely. Roe responds that all of her claims survive because they are subject to the five-year statute of limitations set forth in Section 16.0045 of the Texas Civil Practice and Remedies Code ("CPRC"). For the reasons explained below, the Court concludes that Roe's negligence and gross negligence claims are subject to a five-year statute of limitations, but her remaining claims are subject to a two-year statute of limitations.

Under Texas law, a personal injury suit must generally be filed within two years of the date the cause of action accrued. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a) ("Except as provided by Sections 16.010, 16.0031, and 16.0045, a person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues."). Section 16.0045 of the Texas CPRC, however, establishes

an expanded statute of limitations for suits for personal injury "if the injury arises as a result of conduct that violates" certain criminal statutes. TEX. CIV. PRAC. & REM. CODE § 16.0045(b). As applicable here, the statute of limitations for personal injury claims is five years when the injury arises as a result of sexual assault. TEX. CIV. PRAC. & REM. CODE § 16.0045(b)(1). Under Texas law, "the language 'arises as a result' contemplates that a nexus must exist between the claim and the injury." *Stephanie M. v. Coptic Orthodox Patriarchate Diocese of S. U.S.*, 362 S.W.3d 656, 660 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citation omitted).

While the Texas Supreme Court has never addressed the applicability of this statute to claims against persons whose conduct does not violate the penal code, Texas courts of appeals have repeatedly applied Section 16.0045(b)'s five-year statute of limitations to claims against third parties when the claims are for an injury arising from conduct that violates one of the penal code provisions listed in that section. *See, e.g.*, *Rodarte v. Tex. Dep't of Family & Protective Servs.*, No. 04-14-00922-CV, 2015 WL 5837656, at *2 (Tex. App.—San Antonio Oct. 7, 2015, no pet.) (stating in dicta that if a father's lawsuit against the Texas Department of Family and Protective Services for failing to produce an investigation file involving allegations of sexual abuse of his two children was construed as asserting claims for personal injury arising from the sexual abuse, then such claims would be subject to a five-year statute of limitations); *Bertrand v. Bertrand*, 449 S.W.3d 856, 867 (Tex. App.—Dallas 2014, no pet.) (applying five-year statute of limitations to claims against third party); *Mayzone v. Missionary Oblates of Mary Immaculate of Tex.*, No. 04-13-275-CV, 2014

WL 3747249, at *3 (Tex. App.—San Antonio July 30, 2014, pet. denied) (applying the five-year statute of limitations to claims of negligence, civil conspiracy, breach of fiduciary duty, and fraud brought against church and other third party arising out of sexual assault by priest who was not a party to the litigation). Because in the absence of Texas Supreme Court decisions on the matter, Texas appellate court decisions are the "strongest indicator of what [the Texas] state supreme court would do," the Court concludes that Section 16.0045 can apply to claims against third parties whose conduct did not violate the relevant penal code provisions. *Hux*, 819 F.3d at 780–81.

Turning to the facts of this case, because the injury that Roe alleges resulted from SWBTS and Patterson's negligence and gross negligence is the same injury that resulted from Doe's sexual assault, the Court concludes that these claims arise as a result of her sexual assault such that the five-year statute of limitations applies to Roe's negligence and gross negligence claims. *See Stephanie M.*, 362 S.W.3d at 660 (applying the five-year statute of limitations under Section 16.0045 to plaintiff's claims against a church for failing to have appropriate policies in place to prevent priests from sexually abusing children, failing to properly supervise the plaintiff's alleged sexual assailant, a priest, and allowing the priest unsupervised access to the plaintiff).

Roe contends that the five-year statute of limitations also applies to her IIED and public-disclosure-of-private-fact claims. However, these claims do not arise from the sexual assaults alleged by Roe. Instead, the IIED claims arise from SWBTS and Patterson's alleged actions and statements that *followed* the sexual assault, because

it was such statements that purportedly resulted in Roe's severe emotional distress. Similarly, Roe's public-disclosure-of-private-fact claims stem from SWBTS's or Patterson's disclosures, not from the sexual assaults alleged by Roe. Therefore, the standard two-year statute of limitations will apply to Roe's IIED and public-disclosure claims. *See Deaver v. Desai*, 483 S.W.3d 668, 675 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (two-year statute of limitations for claims for IIED) (citations omitted); *Boothe v. Boothe*, No. 01-96-315-CV, 1996 WL 659411, at *1 (Tex. App.—Houston [1st Dist.] Nov. 14, 1996, no writ) (not designated for publication) (two-year statute of limitations for claims for invasion of privacy). Accordingly, Roe's IIED and public-disclosure claims are dismissed to the extent they arise from conduct that occurred more than two years before the date this suit was filed.

## B. Roe's Negligence Claims Against SWBTS

In support of its motion to dismiss, SWBTS argues that it did not owe Roe a duty to protect her from the criminal acts of third parties because there was no special relationship between SWBTS and Roe or Doe. SWBTS further argues that Roe's injury was not foreseeable. In response, Roe points to four primary theories of SWBTS's duty and corresponding liability: (i) a duty arising from a special relationship between SWBTS and Doe as a student; (ii) a duty arising from vicarious liability for the actions of Patterson and other employees; (iii) a duty arising under Texas's multifactor test; and (iv) a duty arising from the negligent hiring, training or supervision of (1) employees other than Doe and (2) Doe. For the reasons stated below,

the Court concludes that Roe has sufficiently stated a claim for negligence under three of these theories.

"The general rule is that there is no duty to protect another from the conduct of a third person." *Doe v. Boys Clubs of Greater Dall., Inc.*, 868 S.W.2d 942, 949 (Tex. App.—Amarillo 1994), *aff'd*, 907 S.W.2d 472 (Tex. 1995). However, an exception to this general rule applies when a special relationship exists either between the defendant and the plaintiff or between the defendant and the third person. *Id.* Under this special-relationship exception, there are two theories which may impose a duty on an employer: respondeat superior and negligent hiring, training, or supervision. *Id.* at 950; *see also Lozano v. Baylor Univ.*, 408 F.Supp.3d 861, 895 (W.D. Tex. 2019) (discussing the elements of a negligent hiring, training, or supervision claim). Respondeat superior is limited in that it only applies when the third party's acts are within the course and scope of his employment. *Doe v. Boys Clubs*, 868 S.W.2d at 950. For a negligent hiring, training, or supervision claim, the employee need not be acting in the scope of his employment, but the plaintiff's injury must be a result of the employee's employment. *Lozano*, 408 F.Supp.3d at 895.

### i. SWBTS's special relationship with Doe as a student

Roe first attempts to argue that SWBTS had a special relationship with Doe because "SWBTS sought, established and maintained a 'special relationship' with the young men admitted as students at the Seminary training to become pastors." (Dkt. #199 at 9). Specifically, Roe argues that SWBTS created a special relationship by maintaining a strict ethical conduct policy and "controll[ing] or at least heavily

11

influenc[ing] every aspect" of its seminary students' lives. (Dkt. #199 at 9). However, Roe does not identify and the Court is not aware of any Texas cases supporting the idea that any university, whether it be a seminary or not, has a special relationship with its students. *Boyd v. Tex. Christian Univ., Inc.*, 8 S.W.3d 758, 760 (Tex. App.— Fort Worth 1999, no pet.) (recognizing the absence of case law supporting the creation of a special relationship between a university and its adult students under the doctrine of in loco parentis). As the court noted in *Doe 12 v. Baylor University*, "[i]ntermediate Texas Courts have declined to hold that the relationship between a private university and its adult students constitutes a special relationship . . . as have most courts surveying state law on this issue." 336 F.Supp.3d 763, 787 (W.D. Tex. 2018) (citations omitted). Thus, no special relationship exists between SWBTS and Doe as a result of Doe's enrollment as a seminary student.

### ii. SWBTS's vicarious liability for the actions of Patterson and other employees

Roe also argues that she has alleged facts sufficient to establish that she was owed a duty based upon SWBTS's vicarious liability for the actions of Patterson and other employees, besides Doe. Vicarious liability imposes liability on an employer for "its employee's negligent acts if those acts are within the course and scope of his employment." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018) (citation omitted).

While Roe has not alleged negligence by any employee besides Patterson, the Court concludes that Roe has alleged a negligence claim against SWBTS based upon its vicarious liability for Patterson's actions. Specifically, viewing Roe's allegations in

the light most favorable to her, and as elaborated in Section III(C), *infra*, in his role as president of SWBTS, Patterson was aware of Doe's violent and criminal past, encouraged Doe to "fish" the female student population, and negligently allowed Doe to have guns on campus. Therefore, Roe has stated a negligence claim against SWBTS based upon the doctrine of respondeat superior for Patterson's actions.

### iii. SWBTS's duty under Texas's multifactor test

Roe also argues that SWBTS owed her a duty of reasonable care under Texas's multifactor test. When determining whether a plaintiff is owed a duty under this test, Texas courts "consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Hernandez v. Baylor Univ.*, 274 F.Supp.3d 602, 619 (W.D. Tex. 2017) (quoting *Greater Hous. Transp. Co. v. Philips*, 801 S.W.2d 523, 525 (Tex. 1990)).

In this analysis, "[f]oreseeability is the dominant—but not the controlling— consideration." *Id.* As the Texas Supreme Court has noted, the danger of an injury is foreseeable if its "general character might reasonably have been anticipated." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (cleaned up). Such an analysis "involves a practical inquiry based on 'common experience applied to human conduct.'" *Id.* (citation omitted). "Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury." *Id.*

Roe relies primarily on *Hernandez* and *Lozano* in support of her argument that the multifactor test could impose a duty on SWBTS. *See Hernandez*, 274 F.Supp.3d 602; *Lozano*, 408 F.Supp.3d 861. In evaluating defendant Baylor's motion to dismiss the plaintiff's negligence claims in *Hernandez*, the court held that Texas law "may impose a duty of reasonable care on Baylor" when the plaintiff alleged that Baylor knew the perpetrator of her sexual assault had previously been cited for misdemeanor sexual assault and knew that six other students at Baylor had reported being sexually assaulted by the same perpetrator. 274 F.Supp.3d at 619–20. The plaintiff also alleged that Baylor was keeping such reports diverted from the student conduct or criminal processes and was instead attempting to discredit the complainants. *Id.* at 620.

Similarly, in *Lozano*, the plaintiff alleged that she was assaulted multiple times by a student football player, six top Baylor employees were aware of the first assault before the others occurred, Baylor failed to help her and failed to discipline the perpetrator of the assault despite being aware of it, and Baylor acted in concert with the local police departments to prevent any reports of violence committed by football players from being investigated by the police. 408 F.Supp.3d at 894–95. As the court in *Lozano* explained when denying Baylor's motion to dismiss, the plaintiff did not merely allege that Baylor failed to help her or failed to discipline the perpetrator, but rather Baylor took affirmative steps that increased the likelihood that female students would be assaulted. *Id.* at 894.

On the other hand, SWBTS relies on *Scott v. Christian Methodist Episcopal Church* and *Barton v. Whataburger, Inc.* in support of its argument that Doe's sexual assault was not foreseeable. *See Scott*, No. 02-10-434-CV, 2012 WL 42991 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.); *Barton*, 276 S.W.3d 456 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). In *Scott*, when evaluating a motion for judgment notwithstanding the verdict, the court held that a bishop's sexual assault of a man who came to the bishop's home for an interview was not foreseeable to the bishop's church when no background check was performed on the bishop and prior allegations of the bishop's sexual misconduct were not communicated to the church. 2012 WL 42991, at *8–9. In *Barton*, in evaluating a no-evidence summary judgment motion, the court held that an individual's prior convictions for selling cocaine and failing to pay child support did not make his participation in an aggravated robbery reasonably foreseeable because the aggravated robbery required violence and theft and neither of those two "essential ingredients" were present in either earlier conviction. 276 S.W.3d at 464.

Here, Roe alleges that in September 2014, prior to the alleged physical and sexual assaults, SWBTS was on notice of Doe's criminal behavior and the danger he posed to Roe. She further alleges that one of Roe's professors was informed of Doe's stalking behavior towards Roe, but no action was taken. SWBTS attempts to characterize this as "a casual mention of stalking," but fails to explain why this notice to a SWBTS employee did not provide SWBTS with notice of the stalking and the potential danger Roe faced. (Dkt. #171 at 18). Roe further alleges that she learned

from Doe that he had a violent and criminal past, that Patterson was aware of Doe's past, and that Patterson told Doe that his past would not preclude him from enrolling in the seminary program. Further, Roe alleges that other SWBTS employees were aware that Doe had guns on campus, in contravention of the school's firearm policies. These guns were then used to effectuate the alleged repeated terrorization of Roe.

The allegations in this case are distinguishable from the cases cited by Roe, as well as the cases referenced by SWBTS. In *Hernandez* and *Lozano*, which Roe relies on, Baylor was allegedly aware of the perpetrators' prior acts of sexual violence and/or violence towards students, and in *Lozano*, the school allegedly knew that the perpetrator had already assaulted the plaintiff. On the other hand, in *Scott* and *Barton*, which SWBTS relies on, the defendants were not aware of any violent or sexually violent acts by the perpetrators or that the perpetrators had targeted the ultimate victims.

Although Roe does not allege that Doe had a criminal past of sexual misconduct that SWBTS was aware of, Roe *does* allege: (i) that SWBTS was on notice of Doe's criminal behavior and the danger he posed to Roe; (ii) that Doe had a violent and criminal past; (iii) that Patterson said Doe's past wouldn't be a problem; (iv) that SWBTS had knowledge through an employee that Doe was stalking Roe; and (v) that SWBTS had knowledge through at least one employee that Doe had guns on campus. And, while the allegations are ambiguous regarding to what extent Patterson (and therefore SWBTS) was aware of Doe's criminal and violent past, viewing the allegations in the light most favorable to Roe along with Roe's allegation that SWBTS

16

"was on notice of Doe's criminal behavior and the danger he posed to Roe," the Court considers the complaint to contain sufficient allegations that SWBTS knew of Doe's criminal and violent past. (Dkt. #8 ¶ 53). To be sure, a history of violence is not the same as a history of sexual violence. However, considering SWBTS's alleged knowledge of the past criminal conduct *and* of Doe's stalking behavior towards Roe *and* of Doe's guns on campus, the Court concludes that Roe has sufficiently alleged that the general character of Roe's injury was foreseeable.

Further, the same factfinder could conclude that the social utility of SWBTS's conduct of allowing someone with a known criminal history, who has specifically been targeting one student, and who has guns on campus, to continue as a student and an employee without intervention from the seminary is low. According to the allegations, SWBTS failed to do anything in response to the stalking report or about Doe's possession of guns on campus, despite knowing about his criminal history and giving him a job where he had access to all the buildings on campus. A factfinder could conclude that requiring SWBTS to take simple actions to prevent this risk of danger to Roe, such as investigating the stalking, removing Doe's guns, or not allowing applicants with violent or criminal histories to enroll at SWBTS or serve in a student-employee role would not place a large burden on SWBTS. Accordingly, Roe has stated a claim for negligence against SWBTS under Texas's multifactor test.

### iv. Negligent hiring, training, and supervision

The Texas Supreme Court "has not ruled definitively on the existence, elements, and scope" of negligent training, supervision, and hiring claims, but Texas

intermediate courts have held that the "elements of a cause of action for negligently hiring, supervising, training, or retaining an employee are the following: (1) the employer owed the plaintiff a legal duty to hire, supervise, train, or retain competent employees; (2) the employer breached that duty; and (3) the breach proximately caused the plaintiff's injury." *See Lozano*, 408 F.Supp.3d at 895 (cleaned up) (citing *Wal-Mart Stores, Inc. v. Sanchez*, No. 04-02-458-CV, 2003 WL 21338174, at \*5 (Tex. App.—San Antonio 2003, pet. denied) (mem. op.)). The employee who was negligently hired, trained, or supervised does not need to be acting in the scope of his employment to impose liability on the employer, but the plaintiff's harm must be the result of the employee's employment. *Id.*

A negligent hiring, training or supervision claim therefore requires separate allegations of a common law tort against the negligently hired, trained, or supervised employee. *Id.* at 896. Moreover, the Texas Supreme Court has confirmed that employer liability for a negligent hiring, training, or supervision claim may be based upon the multifactor test discussed above. *See Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 507 (Tex. 2017).

### a. Negligent training and supervision of employees other than Doe

As an initial matter, the only employee other than Doe that Roe alleges committed a common law tort against her was Patterson. Therefore, the Court will consider this claim as only pertaining to the negligent training and supervision of Patterson, not any other employee. Regarding whether SWBTS owed Roe a duty, as detailed above, Roe has plausibly alleged that SWBTS owed Roe a duty under the

multifactor test. The Court finds it plausible that this included a legal duty to supervise and train Patterson to "screen the backgrounds . . . of student-employees" and to implement safeguards to protect students from foreseeable criminal activities. *See Lozano*, 408 F.Supp.3d at 896 (holding that because plaintiff plausibly alleged that Baylor had a duty under the multifactor test, it was plausible that this included a "legal duty to supervise and train competent employees to respond to a known, foreseeable, and likely risk that a student might assault another student"); (Dkt. #8 at 28–29 (detailing the alleged failures of training and supervision)).

The Court next must consider whether Roe's injury from her sexual assault resulted from Patterson's employment. As the *Lozano* court explained, "the result of employment test requires only that there must be evidence that the plaintiff's injuries were brought about by reason of the employment of the incompetent servant employee and were, in some manner, job-related." *Lozano*, 408 F.Supp.3d at 897 (cleaned up). The Court concludes that Roe has sufficiently pleaded that her injury resulted from Patterson's employment because she alleges that Patterson, as president of SWBTS, knew about Doe's violent and criminal past and knew about his possession of guns on campus, but failed to act in light of this knowledge. *See Lozano*, 408 F.Supp.3d 895–96 (holding that the plaintiff alleged a negligent training and supervision claim against the university based on the underlying claims of negligence against employees who allegedly failed to respond to and covered up assault allegations).

Thus, Roe has plausibly alleged that her injuries were the result of SWBTS's failure to supervise or train Patterson.

### b.  Negligent hiring, training, and supervision of Doe

SWBTS argues that its relationship with Doe in his capacity as an employee cannot support liability because "SWBTS as his employer is not responsible for what occurred" when he "deviated from the performance of his duties as a plumber." (Dkt. #171 at 15). Roe argues that she has also alleged a negligent hiring, training, and supervision claim against SWBTS with regards to Doe, which does not require an employee to be acting in the scope of their employment.

However, what Roe must allege is that her injuries were a result of Doe's employment. Viewing Roe's allegations in the light most favorable to her, Doe had knowledge of and access to the buildings on campus as a result of his employment with SWBTS, and Doe was wearing his SWBTS work uniform during one of the assaults. Based on these allegations, the Court concludes that Roe has sufficiently pleaded, at this stage of the proceedings, that her injuries were at least in part a result of Doe's employment.

Turning to whether Roe sufficiently alleged that SWBTS breached a duty in regard to its hiring, supervision, and training of Doe: Roe alleges that SWBTS was aware of Doe's "dangerous and exploitive propensities" because of conversations Doe had with Patterson, Roe's report of Doe's stalking behavior, and Doe's possession of firearms on campus. (Dkt. #8 ¶ 122). Roe argues that it was foreseeable to SWBTS that if it breached its duty of care in regard to its hiring, supervising, and retaining,

"female students would be vulnerable to sexual assault, domestic violence, and retaliatory conduct by Doe and others." (Dkt. #8 ¶ 122).

However, Roe fails to specifically allege that SWBTS breached this duty by negligently hiring or training Doe. Instead, Roe alleges that SWBTS failed to "train faculty and staff to screen the backgrounds (criminal and social) of student-employees," but this allegation does not go as far as alleging that SWBTS was negligent in hiring or training Doe himself.

Roe further alleges that SWBTS "[f]ail[ed] to appropriately monitor to ensure that student-employees are not brought on to campus without regard to the safety of other students," and failed to "supervise faculty and staff to ensure proper supervision, control, restraint and monitoring of student-employees." The Court construes this as alleging that SWBTS negligently supervised Doe.[1] The Court concludes that Roe has failed to allege a negligent hiring or training claim as to Doe but has alleged a negligent supervision claim as to SWBTS.[2]

## C. Roe's Negligence Claims Against Patterson

Patterson argues that Roe has failed to establish any negligence claim against him individually because he did not owe Roe any duty and because Roe's injury was

---

[1] As noted above, a negligent hiring, training or supervision claim requires allegations of a common law tort against the employee. The Court construes the allegations of Doe's abuse as constituting allegations of a common law tort against Doe.

[2] The Court notes that respondeat superior cannot create a special relationship between Doe and SWBTS because his alleged acts terrorizing Roe were not withing the scope of his employment. *Ross v. Marshall*, 426 F.3d 745, 764 (5th Cir. 2005) ("[U]nder Texas law, an agent's serious criminal activity is almost never taken within the scope of the authority granted by the principal." (cleaned up)).

unforeseeable. Roe responds that Patterson owed her independent duties of care under Texas's multifactor test and under various Restatement of Agency provisions.

To be individually liable for negligence under Texas law, an individual acting as an agent or employee must have an independent duty of care to the plaintiff, separate from his employer's duty to the plaintiff. *Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (citing *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)). Therefore, Roe must sufficiently allege that Patterson had a duty to Roe *independent* of SWBTS's duty to Roe.

### i.  Texas's multifactor test

As discussed herein, *see supra* Section III(B)(iii), in applying the multifactor test, courts consider "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Hernandez*, 274 F.Supp.3d at 619 (quoting *Greater Hous. Transp. Co*, 801 S.W.2d at 525).

Patterson argues that Doe's actions were not foreseeable because foreseeability in sexual assault cases "requires some prior indication that someone may commit sexual assault." (Dkt. #203 at 9). But, as explained above, the danger of an injury is foreseeable if its "general character might reasonably have been anticipated." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d at 478 (cleaned up). The Court concludes that at this stage, Roe has sufficiently alleged facts that would allow a factfinder to conclude that her injuries were foreseeable to Patterson because she alleges

Patterson knew Doe had a criminal history, encouraged him to seek out female students, and allowed him to have guns on campus.

As with SWBTS, Patterson's reliance on the decision in *Scott* is misplaced. As explained herein, *see supra* Section III(B)(iii), *Scott* is distinguishable because in that case the defendant had no knowledge of *any* previous misconduct by the perpetrator of the sexual assault. 2012 WL 42991, at *8–9. Moreover, *Scott* concerned a challenge to a trial court judgment rendered after a jury trial on all issues. *Id.* Thus, the *Scott* court's decision tuned on a complete trial court record. Here, at the motion to dismiss stage, the Court looks only to the allegations in Roe's complaint, which construed in the light most favorable to Roe, include allegations that Patterson was aware of Doe's troubled past.

Further, when considering the social utility of Patterson's conduct and the burden and the consequences of imposing a duty, the Court concludes that these factors do not weigh against imposing a duty. There is no social utility to Patterson's alleged conduct of ignoring Doe's violent and criminal past and his possession of weapons on campus. And any burden and consequence of imposing a duty would be minimal, because like Baylor's athletic director in *Lozano*, Patterson as president "'would generally have superior knowledge of the risk or a right to control the actor who caused the harm,' with ultimate responsibility and authority to control the conduct of the [student-employee]." *Lozano*, 408 F.Supp.3d at 898 (quoting *Pagayon*, 536 S.W.3d at 504) (determining that Baylor's athletic director could be subject to an individual duty of care given his responsibility to control the conduct of student-

athletes). Thus, a fact finder could conclude that Patterson's failure to act when he knew about Doe's violent and criminal past and Doe's possession of weapons on campus violated a duty Patterson owed to Roe under the Texas multifactor test. Accordingly, Roe has plausibly alleged her negligence claim against Patterson.[3]

## D. Roe's IIED Claims Against SWBTS and Patterson

As discussed herein, *see supra* Section III(A), Roe's IIED claims cannot be based on any conduct that occurred more than two years before the filing of this lawsuit. Thus, the only remaining allegation related to Roe's IIED claim is that "[s]ince May 2018, Patterson has published or caused to be published false statements, including statements that Roe lied to police, engaged in consensual sexual intercourse on multiple occasions on campus, and sent multiple nude photographs to Doe." (Dkt. #8 ¶ 139).

Defendants argue that Roe's remaining IIED claims should be dismissed because IIED is a "gap-filler tort" and not appropriate when another cause of action exists for redress—which in this case would be a claim for defamation. Roe responds in part[4] that she should be allowed to amend her complaint to include a claim for defamation, as Defendants clearly anticipated this claim.

---

[3] Because the Court concludes that Roe has plausibly alleged that Patterson has a duty under the multifactor test, it need not address Roe's other theories of duty from the Restatement of Agency that are based on Patterson's same conduct.

[4] Roe also argues that her complaint sufficiently alleges a defamation claim, and only mislabels the legal theory, which is not a reason for dismissal under 12(b)(6). However, Roe fails to allege all elements of a defamation claim—specifically, a claim for defamation requires allegations that the plaintiff acted with the requisite mental state when publishing the false statements, and this allegation is missing from the complaint. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

24

As the Texas Supreme Court has stated, "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies. Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (citation omitted). "Thus, '[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available.'" *Cunningham v. Politi*, No. 4:18-CV-362-ALM-CAN, 2019 WL 2517085, at \*10 (E.D. Tex. Apr. 30, 2019) (quoting *Oliphint v. Richards*, 167 S.W.3d 513, 517 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)), *report and recommendation adopted*, 2019 WL 2524737 (E.D. Tex. June 19, 2019). Here, because the gravamen of Roe's remaining IIED claim—that Patterson "published or caused to be published false statements" about Roe—amounts to a straightforward defamation claim, her IIED claim must be dismissed. *See Cunningham*, 2019 WL 2517085, at \*10 (at the 12(b)(6) stage, recommending dismissal of plaintiff's IIED claim when it was based on the same facts as his defamation claim). However, the Court also concludes that Roe will be allowed to amend her complaint to formally assert a claim for defamation, as set forth in Section F, *infra*.

### E.  Roe's Public-Disclosure Claim Against SWBTS and Patterson

As with Roe's IIED claims, her public-disclosure-of-private-fact claims allegedly arising from disclosures made more than two years prior to the institution of this lawsuit are barred by the applicable statute of limitations. *See supra* Section III(A). Defendants argue that Roe's remaining public-disclosure claims should be

dismissed because she fails to allege that they publicized a *true* fact and, in the alternative, any publicized true facts were of public concern. Roe responds that she has alleged only that certain publicized statements were false, and the public-concern determination is fact-intensive and not appropriate at this stage in the litigation. For the reasons explained below, the Court concludes that these claims should be dismissed.

"To establish a claim for the tort of invasion of privacy based on the public disclosure of private facts, the plaintiff must show that (1) publicity was given to matters concerning his private life; (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized was not of legitimate public concern." *Lowe v. Hearst Commc'ns, Inc.*, 487 F.3d 246, 250 (5th Cir. 2007) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473–74 (Tex. 1995)). Whether a publicized matter is of legitimate public concern is "a matter of law" for the Court to determine. *Id.* This test, which is the same under Texas state law and federal constitutional law, should be "construed broadly." *Id.* Additionally, what is publicized must be *facts*, not falsities. *Doe v. United States*, 83 F.Supp.2d 833, 841 (S.D. Tex. 2000).

Looking solely to the complaint, it appears that the only *facts* Roe can base her claim upon from the allowable time period are "personal confidential information about Roe" that was published in Sharayah Colter's May 31, 2018, blog post. (Dkt. #8 ¶ 113). However, Roe fails to allege with sufficient specificity the facts that were shared about Roe that constituted "personal confidential information" or that the

*facts* shared were the type that publication of the same would be highly offensive to a reasonable person. Without such information, the Court cannot determine if what was publicized was of legitimate public concern. Accordingly, the Court concludes that Roe's public-disclosure-of-private-facts claims must be dismissed.

## F.  Leave to Amend the Complaint

In her responses to SWBTS's and Patterson's motions, Roe requests leave to amend her complaint to include a separate cause of action for defamation and include facts she has learned through discovery. (Dkt. #199 at 28); (Dkt. #200 at 15, 24–25).

Because the deadline for amending her complaint had passed, her request is governed by Rule 16(b), which requires a showing of good cause. *See Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) ("Rule 16(b) governs the amendment of pleadings after a scheduling order's deadline to amend has expired." (cleaned up)). Pursuant to Rule 16, a scheduling order may be modified "only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Only if a party shows good cause for missing the deadline will the more liberal standard of Rule 15(a) then apply. *Filgueira*, 734 F.3d at 422.

There are four factors relevant to the determination of good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (quotation omitted).

Considering first only her request to amend her complaint to include a claim for defamation, in explaining the failure to previously amend her complaint, Roe

states that "she was not on notice of any potential defect in her complaint until . . . SWBTS filed its Motion to Dismiss under 12(b)(6) and Patterson sought judgment on the pleadings under Rule 12(c) on the same grounds. . . . more than two years after Plaintiff filed her complaint and after multiple rounds of written discovery and nearly two dozen depositions." (Dkt. #200 at 14). This argument misses the mark because it is not Defendants' obligation to point out the deficiencies in Roe's complaint. Roe could have independently determined at any point that her IIED claim amounts to a defamation claim and moved to file an amended complaint addressing the deficiency. Thus, the Court concludes this element does not weigh in favor of finding good cause.

However, the second factor weighs heavily in favor of finding good cause. As discussed herein, *see supra* Section III(D), an IIED claim is not available to Roe because a defamation claim could provide a remedy to her. Therefore, without leave to amend, Roe will be unable to pursue either claim. The third and fourth factors also weigh heavily in favor of finding good cause. As Roe has pointed out, there will be little to no prejudice that results from allowing Roe to amend to plead her complaint to include a claim for defamation as Defendants have acknowledged that Roe's IIED claim should properly be a defamation claim. *See* (Dkt. 171 at 23 (SWBTS states that the IIED allegations actually "allege[] a defamation cause of action.")); (Dkt. 183 at 1 (Patterson states that Roe's remaining IIED claims "are actually claims for defamation.")). Rather, "[r]equiring [defendants] to defend against a claim already anticipated surely does not result in undue prejudice." *Polnac v. City of Sulphur Springs*, 4:20-CV-666, 2021 WL 3663539, at *17 (E.D. Tex. Aug. 18, 2021). Finally, to

the extent any additional discovery is required for such defamation claim and new dispositive motions need to be filed, a continuance would be able to cure any such prejudice Defendants would face. Therefore, the Court concludes that good cause exists to modify the scheduling order to allow amendment of the complaint.

Turning to Rule 15(a), the Court considers factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466–67 (5th Cir. 2012) (cleaned up).

Looking to the first few factors, the Court concludes that there has been no bad faith or dilatory motive on Roe's part. As noted above, while there has been a delay in seeking amendment, the motions before the Court were not filed until more than two years after this lawsuit began and were filed in the midst of numerous discovery disputes and after many depositions. Nor has Roe repeatedly failed to cure deficiencies by prior amendments. Further, Defendants will not be unduly prejudiced by Roe amending her complaint to add a defamation claim.

Finally, the amendment is not futile. "An amendment is futile if the amended complaint would fail to state a claim upon which relief could be granted." *Polnac*, 2021 WL 3663539, at *18 (quotation omitted). Therefore, the Court will apply the Rule 12(b)(6) standard to determine if amendment will be futile. To state a claim for defamation under Texas law, Roe must allege "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the

29

requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d at 593.

Roe alleges that Patterson published or caused to be published false statements about her "since May 2018." Roe's complaint also includes allegations that Patterson and various other SWBTS agents disseminated false information about her "for the purposes of distribution" that was included in various published statements. (Dkt. #8 ¶¶ 113, 116). Further, she already has alleged that these statements resulted in emotional distress, which is a recognized form of damages for a defamation claim. *See In re Lipsky*, 460 S.W.3d at 593. Thus, the Court concludes that Roe's amended complaint will be able to sufficiently state a claim for defamation such that amendment is not futile.

Accordingly, the Court concludes that Roe shall be granted leave to amend her complaint to include a claim for defamation. Roe's request that she be granted leave to amend her complaint to include additional facts learned from discovery is denied because she has not demonstrated good cause for such an amendment.[5]

## IV. CONCLUSION

For the foregoing reasons, Defendant Southwestern Baptist Theological Seminary's Motion to Dismiss, (Dkt. #171), is **GRANTED in part** and **DENIED in part**, and Leighton Paige Patterson's Motion for Judgment on the Pleadings, (Dkt. #183), is **GRANTED in part** and **DENIED in part,** as follows:

---

[5] In fact, Roe's request that she be able to include new facts learned from discovery is limited to one sentence in her responses. (Dkt. #199 at 28); (Dkt. #200 at 23–24).

(i)    Roe's intentional infliction of emotional distress claims are **DISMISSED with prejudice**; and

(ii)    Roe's public-disclosure-of-private-fact claims are **DISMISSED with prejudice**.

The dismissal motions filed by Southwestern Baptist Theological Seminary and Patterson are otherwise **DENIED**. It is further **ORDERED** that Roe has **fourteen days** from the date of this order to amend her complaint.

**So ORDERED and SIGNED this 7th day of March, 2022.**

_____

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE