UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JANE ROE | § | |
| | § | |
| v. | § | CIVIL NO. 4:19-CV-179-SDJ |
| | § | |
| LEIGHTON PAIGE PATTERSON, ET AL. | § § | |

## MEMORANDUM OPINION AND ORDER

Following remand from the Fifth Circuit, the Court ordered supplemental briefing from the parties on the scope of remand. (Dkt. #484 at 2). Specifically, the Court asked the parties to address "whether, with regard to the remaining defamation claim, the Fifth Circuit vacated this Court's judgment only as to Patterson or as to Patterson and the Seminary." (Dkt. #484 at 2). The parties submitted briefing in accordance with the Court's order. (Dkt. #485, #488, #493, #499). Plaintiff Jane Roe argues that the Fifth Circuit vacated the Court's defamation judgment in its entirety, thereby reviving her defamation claims against both Defendant Leighton Paige Patterson and Defendant Southwestern Baptist Theological Seminary ("SWBTS"). (Dkt. #488 at 2); (Dkt. #499 at 4). SWBTS argues that the Fifth Circuit vacated the Court's defamation judgment only as to Patterson. (Dkt. #485 at 2–3); (Dkt. #493 at 1–2).

The Court agrees with SWBTS. For the reasons below, the Court holds that the Fifth Circuit vacated the Court's defamation judgment only as to Patterson, and only as to the "Loveless Letter." That is, the Fifth Circuit only revived Roe's

1

defamation claim against Patterson based on the Loveless Letter. All claims against SWBTS have been, and remain, dismissed. *See* (Dkt. #454 at 40); (Dkt. #462 at 51).

## I. BACKGROUND

Plaintiff Jane Roe alleges that a fellow student at SWBTS sexually assaulted her. She sued SWBTS and its president, Leighton Paige Patterson, asserting claims for negligence, gross negligence, and defamation.

Roe based her defamation claims against Patterson and SWBTS on several allegedly defamatory communications. Relevant here are Roe's defamation claims based on a June 29, 2018, letter from SWBTS donors to the SWBTS Executive Committee of the Board of Trustees (the "Loveless Letter") sent in support of Patterson following his termination. (Dkt. #462 at 15–16). Prepared by Gary Loveless and Susan Oliver, the Loveless Letter was intended "to express [the signatories'] utter disdain for [SWBTS's] actions" in terminating Patterson's employment. (Dkt. #462 at 15). Roe contends that she was defamed by the following statements in the Loveless Letter concerning her 2015 sexual assault allegations:

> In contrast, the facts regarding the 2015 Southwestern event referenced by Mr. Ueckert in his June 1 statement are well known. It is our understanding that you knew full well that the female student's allegations of rape were false, that she had engaged in consensual sexual activities on more than one occasion and those acts had taken place in public buildings at the Seminary, and that campus security were shown the nude pictures she texted to the male student. It is further our understanding that she begged Dr. Patterson not to call the police but he insisted he would and did so within six minutes of hearing her allegation.
>
> \*\*\*
>
> The full Board understood and accepted Dr. Patterson's explanation of the phrase "breaking her down" [sic] that appeared in that email as

2

> being a statement of his desire to meet with her (without police present, but clearly, as was always his practice, with other Seminary personnel present) and attempt to help her recant her false allegations of rape before she continued with such false statements to the police. While the actual sentence for a criminal conviction of making a false statement to the police may vary from jurisdiction to jurisdiction, the criminal offense itself remains a permanent mark on an individual's record.

(Dkt. #462 at 15–16).

Although the Loveless Letter was not directly drafted by Patterson, SWBTS, or their employees, Roe maintains that they are responsible for its allegedly defamatory content. Roe argues that Patterson was involved in the Loveless Letter through Scott Colter, Patterson's former chief of staff and personal assistant. (Dkt. #462 at 37–38). Roe argues that SWBTS was involved in the letter through its employees Scott Colter, Candi Finch, Dean Nichols, and John Nichols. (Dkt. #462 at 47–48).

Patterson and SWBTS each moved for partial summary judgment, and the Court granted summary judgment for Defendants on all claims—including Roe's defamation claims based on the Loveless Letter. (Dkt. #454 at 40); (Dkt. #462 at 51). Importantly, the Court granted summary judgment for Patterson and SWBTS on largely independent grounds. That is, the Court dismissed the Loveless-Letter defamation claim against Patterson for different reasons than it dismissed the same claim against SWBTS. *Compare* (Dkt. #462 at 37–43), *with* (Dkt. #462 at 47–48).

As to Patterson, the Court found that "neither Gary Loveless, Susan Oliver, nor Scott Colter were agents of Patterson during the preparation and publication of the Loveless Letter." (Dkt. #462 at 42). The Court held that absent this principal–agent relationship, Patterson could not be held liable for the allegedly defamatory

3

content of a letter he did not draft. (Dkt. #462 at 42–43). As to SWBTS, the Court took a different approach. Roe alleged, and SWBTS did not dispute, that its employees were involved in the preparation of the Loveless Letter. (Dkt. #462 at 47–48). Thus, unlike with Patterson, a principal–agent relationship *did* exist between SWBTS and individuals involved in preparing the Loveless Letter. However, the Court found that those individuals—SWBTS employees—were acting outside the scope of their employment with SWBTS in preparing the letter. (Dkt. #462 at 48). Indeed, the Loveless Letter was "made directly *against* the interests of SWBTS, criticizing the institution for what the authors viewed as SWBTS's improper actions in terminating Patterson." (Dkt. #462 at 45). Thus, the allegedly defamatory content of the Loveless Letter cannot be attributed to SWBTS.

Roe appealed. The Fifth Circuit affirmed most of the Court's "comprehensive and well-reasoned opinions," saying: "We primarily agree with the district court's analysis and do not feel the need to address most of Roe's challenges, many of which are not responsive to the district court's decisions." *Roe v. Patterson*, No. 23-40281, 2024 WL 1956148, at *1 (5th Cir. May 3, 2024). However, the Fifth Circuit broke from this Court's judgment on one issue: With regard to the Loveless Letter, it found that "the summary judgment evidence creates a genuine issue over whether Colter was indeed acting as Patterson's agent." *Id.* at *2. Even still, the Court found that it was unclear under Texas law "whether, assuming agency, Patterson can be liable for the allegedly defamatory statements in the letter." *Id.* Thus, the Fifth Circuit certified two questions to the Texas Supreme Court:

4

1. Can a person who supplies defamatory material to another for publication be liable for defamation?

2. If so, can a defamation plaintiff survive summary judgment by presenting evidence that a defendant was involved in preparing a defamatory publication, without identifying any specific statements made by the defendant?

*Id.* at *3.

The Texas Supreme Court answered yes to both questions. *Roe v. Patterson*, 707 S.W.3d 94, 96 (Tex. 2025). As to the first, the Supreme Court held that "a person who supplies defamatory material to another for publication may be liable if the person intends or knows that the defamatory material will be published." *Id.* Applying this principle here, "Roe must show that Colter [(Patterson's putative agent)] intended or knew that the defamatory statements in the donor letter would be published." *Id.* at 99.

As to the second question, the Texas Supreme Court held that "a plaintiff may survive summary judgment without identifying the specific statements the defendant made in supplying the defamatory material if the evidence is legally sufficient to support a finding that the defendant was the source of the defamatory content." *Id.* at 96. "Evidence that the defendant was the source of defamatory content may include proof that the defendant made the same defamatory statement to others, that the defendant had unique or personal knowledge of the defamatory content and its details, or that the publishers relied on the defendant to support the truthfulness of the allegedly defamatory statements." *Id.* at 101. The plaintiff may meet its burden through direct or circumstantial evidence, but "[e]vidence that amounts to mere speculation or surmise does not suffice to survive summary judgment." *Id.*

5

After receiving the Texas Supreme Court's answers to its certified questions, the Fifth Circuit "vacate[d]" this Court's judgment "with respect to Roe's defamation claim" and remanded for further proceedings. *Roe v. Patterson*, No. 23-40281, 2025 WL 673436, at *1 (5th Cir. Mar. 3, 2025). The Court then held a status conference and ordered the parties to submit supplemental briefing on the scope of remand. Specifically, the Court asked the parties to address "whether, with regard to the remaining defamation claim, the Fifth Circuit vacated this Court's judgment only as to Patterson or as to Patterson and the Seminary." (Dkt. #484 at 2).

The parties submitted briefing in accordance with the Court's order. (Dkt. #485, #488, #493, #499). Roe argues that the Fifth Circuit vacated the Court's defamation judgment in its entirety, thereby reviving her defamation claims against both Patterson and SWBTS. (Dkt. #488 at 2); (Dkt. #499 at 4). SWBTS argues that the Fifth Circuit vacated the Court's defamation judgment only as to Patterson. (Dkt. #485 at 2–3); (Dkt. #493 at 1–2).

## II. LEGAL STANDARD

"The mandate rule requires a district court on remand to effect [the appellate court's] mandate and to do nothing else." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (quoting *United States v. Castillo,* 179 F.3d 321, 329 (5th Cir.1999)). Put differently, the mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id.* (quoting *Castillo*, 179 F.3d at 329). Under this rule, a district court "must implement both the letter and the spirit of the

6

appellate court's mandate," "tak[ing] into account the appellate court's opinion and the circumstances it embraces." *Id.* (cleaned up).

### III. DISCUSSION

The Fifth Circuit vacated this Court's judgment "with respect to Roe's defamation claim." *Patterson*, 2025 WL 673436, at *1. Devoid of context, this decretal language is somewhat ambiguous and could apply to Roe's defamation claims against both Patterson and SWBTS, as Roe contends. But district courts are specifically instructed to consider the context surrounding an appellate court's decree—"the appellate court's opinion and the circumstances it embraces"—in determining the scope of remand. *General Universal Systems*, 500 F.3d at 453. Read in context, the Fifth Circuit's vacatur clearly applies only to Roe's defamation claim against Patterson based on the Loveless Letter.

The Fifth Circuit's opinions address only Roe's defamation claim against *Patterson* based on the Loveless Letter. It held that "the summary judgment evidence creates a genuine issue over whether Colter was indeed acting as *Patterson's* agent." *Patterson*, 2024 WL 1956148, at *2 (emphasis added). Finding Texas law to be unclear on certain issues, the Fifth Circuit certified questions bearing on "whether . . . *Patterson* can be liable for the allegedly defamatory statements in the letter." *Id.* (emphasis added). After receiving the Texas Supreme Court's answers to its certified questions, the Fifth Circuit again focused solely on Roe's allegation "that *Patterson* supplied defamatory statements that were used in [the Loveless Letter]." *Patterson*, 2025 WL 673436, at *1 (emphasis added). And it vacated this Court's judgment only

7

as to a singular defamation "claim"—not multiple claims. *Id*. Thus, the Fifth Circuit's vacatur applies only to the single defamation claim against Patterson that it addressed in its opinions.

The Fifth Circuit did not address Roe's defamation claims against SWBTS. In fact, it impliedly affirmed the Court's holding on those claims, saying: "We primarily agree with the district court's analysis and do not feel the need to address most of Roe's challenges, many of which are not responsive to the district court's decisions." *Patterson*, 2024 WL 1956148, at *1. Nor does the logic of the Fifth Circuit's decision extend to SWBTS. As explained above, the Court dismissed Roe's claims against Patterson and SWBTS for different reasons. As to Patterson, the Court found no agency relationship between Patterson and Colter; as to SWBTS, it found that SWBTS employees were acting outside the scope of their employment. *Compare* (Dkt. #462 at 37–43), *with* (Dkt. #462 at 47–48). The Fifth Circuit disturbed only the first of these findings, holding that "the summary judgment evidence creates a genuine issue over whether Colter was indeed acting as Patterson's agent." *Patterson*, 2024 WL 1956148, at *2. That Colter may have been acting as Patterson's agent says nothing about whether Colter and other SWBTS employees were acting within the scope of their employment. Thus, the Fifth Circuit's reasoning does not call into question the Court's holding as to SWBTS.

Roe points to the Fifth Circuit's allocation of costs as evidence that it vacated the Court's judgment as to both Patterson and SWBTS. The Fifth Circuit ordered that "Appellees"—Patterson *and SWBTS*—pay to Appellant the costs on appeal.

8

*Patterson*, 2025 WL 673436, at *1. Roe argues that this allocation makes sense only if SWBTS did not prevail on appeal. (Dkt. #488 at 4–5); (Dkt. #499 at 2–4). In response, SWBTS argues that this cost award does not "necessarily reflect the appellate winner" because "the Fifth Circuit had discretion under Rule 39 to award costs in whatever manner it preferred, and this cost-allocation decision is not a product of briefing or reasoned input from the parties." (Dkt. #493 at 2). The Court agrees with Roe that an appellate court's allocation of costs can indicate the scope of that court's mandate. The Court further agrees that an allocation of costs against "Appellees" (plural) would be odd were one of those appellees to prevail completely. But cost allocation is just one of several indicators of the scope of an appellate court's mandate, and a relatively minor one at that. It cannot overcome the substance of the appellate court's opinion. Here, the substance of the Fifth Circuit's opinions suggests its vacatur is limited to Patterson.

## IV. CONCLUSION

For these reasons, the Court holds that the Fifth Circuit vacated the Court's defamation judgment only as to Patterson, and only as to the Loveless Letter. That is, the Fifth Circuit only revived Roe's defamation claim against Patterson based on the Loveless Letter. All claims against SWBTS have been, and remain, dismissed.

**So ORDERED and SIGNED this 1st day of December, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE