UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JANE ROE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL NO. 4:19-cv-00179-SDJ |
| | § | |
| LEIGHTON PAIGE PATTERSON | § | |
| in his Individual capacity; and | § | |
| SOUTHWESTERN BAPTIST | § | |
| THEOLOGICAL SEMINARY, | § | |
| | § | |
| *Defendants.* | § | |

**LEIGHTON PAIGE PATTERSON'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

Dr. Leighton Paige Patterson files this Motion for Summary Judgment and Brief in Support, following Federal Rule of Civil Procedure 56(a), in response to Plaintiff's Third Amended Complaint and Jury Demand filed by Plaintiff Jane Roe.

**I.**

**STATEMENT OF ISSUES TO BE DECIDED**

After this Court granted summary judgment in favor of all Defendants, the Fifth Circuit vacated the Court's judgment but only with respect to Roe's defamation claim against Dr. Patterson based on the Loveless Letter.[1] Then, based on the Texas Supreme Court answering certified questions applicable to this case while on appeal, the Court granted Dr. Patterson leave to file this summary judgment motion.[2] Dr. Patterson now files this Motion, seeking dismissal of Plaintiff's defamation claims against him, because:

---

[1] *See* Memorandum Opinion and Order (Doc. 500).
[2] Order (Doc. 501).

1

1. Whether Plaintiff has adduced evidence sufficient to raise a genuine issue of material fact that Dr. Patterson, either personally or through a purported agent, was the source of any allegedly false and defamatory statement in the Loveless Letter and intended or knew that the statement would be published.

2. Whether Plaintiff has adduced evidence sufficient to raise a genuine issue of material fact as to the requisite degree of fault where Dr. Patterson had no knowledge of, or involvement in, any alleged publication.

For all of these reasons, both individually and collectively, Plaintiff's remaining claim against Dr. Patterson should be dismissed.

## II.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Dr. Paige Patterson is a public figure who was the President of Southwestern Baptist Theological Seminary ("SWBTS") from 2003 to May 2018.[3] On August 20, 2015, Plaintiff reported allegations of sexual assault to Dr. Patterson that she alleged occurred while she was a student at SWBTS.[4] Within a couple minutes of Plaintiff disclosing her allegations of rape to Dr. Patterson, the allegations were reported to the Fort Worth Police Department.[5] After the initial report, Plaintiff contacted the Fort Worth Police Department and made requests to "get my statement back" and "withdraw the whole thing."[6] She also communicated that "my desire is that this not be pursued one step farther" and asked for the police investigation to be "closed and for this file to be buried."[7]

Still, Plaintiff decided to retain civil legal counsel, who, on March 23, 2016, wrote to SWBTS regarding potential claims against the Seminary and its employees.[8] In response, Mr.

---

[3] Affidavit of Leighton Paige Patterson, attached as Exhibit A.
[4] Plaintiff's Third Amended Complaint, ¶¶ 113-16 (Doc. 223).
[5] *Deposition of John Nichols*, 22:24-24:10, attached as Exhibit B; *Deposition of Kevin Ueckert,* 144:22-145:1, attached as Exhibit C.
[6] Audio Recording of Plaintiff's Call to Fort Worth Police Department, attached as Exhibit D.
[7] *Id*.
[8] Stuart Cochran Letter, attached as Exhibit E.

Sharpe was employed as SWBTS's attorney to investigate Plaintiff's allegations.[9] After conversations with Mr. Sharpe, Plaintiff's original attorney chose not to pursue litigation.

Two years later, in April and May 2018, national attention was given to public attacks on Dr. Patterson's character.[10] A meeting of the full 40-person Board of Trustees was scheduled on May 22, 2018 to evaluate whether Dr. Patterson should continue to act as the Seminary's President.[11] In anticipation of this meeting, Plaintiff's original attorney wrote to Kevin Ueckert, the Chairman of SWBTS's Board of Directors, and renewed his allegations that Plaintiff's report of sexual assault was handled improperly.[12] When the May 22 meeting occurred, the heart of the meeting related to the Seminary's financial situation.[13] The handling of Plaintiff's allegations were addressed near the end of the 13 hour meeting.[14]

The May 22 meeting was called to order in executive session, meaning the session was intended to be entirely confidential.[15] At the start of the meeting, SWBTS' attorney, Michael Anderson, advised the Trustees that "all of the information discussed during the meeting was confidential and protected by the attorney-client privilege."[16] While still in executive session, Shelby Sharpe, still acting as counsel for SWBTS,[17] provided details on his investigation into Plaintiff's allegations.[18] Further, the discussions pertaining to Plaintiff "were made for the purpose of facilitating the rendition of professional legal services to SWBTS and its Trustees pertaining to Dr. Patterson's employment relationship with SWBTS and whether to retain or terminate Dr.

---

[9] *See* Deposition of Shelby Sharpe, 17:16-17:24, 46:16-47:20, attached as Exhibit F.
[10] Plaintiff's Third Amended Complaint, ¶ 107 (Doc. 223).
[11] *Deposition of Kevin Ueckert*, 49:8-49:23, 50:12-50:18, 70:17-71:17.
[12] Stuart Cochran Letter; *Deposition of Kevin Ueckert*, 44:18-49:23.
[13] *Deposition of Kevin Ueckert*, 77:8-80:5.
[14] *Id*.
[15] *Id*.; Affidavit of Michael D. Anderson, ¶ 5, attached as Exhibit G.
[16] Affidavit of Michael D. Anderson, ¶ 5.
[17] *Deposition of Kevin Ueckert*, 75:3-76:7.
[18] *Id*. at 84:11-91:25, 145:2-149:13; *Deposition of Bart Barber*, 73:12-73:19, 116:4-121:7, attached as Exhibit H.

Patterson."[19] As a result of the meeting, SWBTS affirmed that Dr. Patterson handled Plaintiff's allegations appropriately but terminated his employment for unrelated reasons.[20] The Seminary then released a public statement that "Dr. Patterson has complied with reporting laws regarding assault and abuse."[21]

Details of Plaintiff's sexual assault allegations had been discussed in the community since 2015.[22] After Dr. Patterson's removal as President, they were given national publicity. On May 24, 2018, the Fort Worth Star-Telegram published an article pertaining to the decision to change Dr. Patterson's position to president emeritus.[23] With respect to the handling of Plaintiff's allegations, the article quotes email correspondence from Mr. Ueckert in which he stated his understanding that the matter was reported to law officials and that the Seminary determined "[t]he police were involved and met with the individual making the allegations."[24]

On May 27, 2018, the Washington Post reported on Dr. Patterson's removal as President of the Seminary.[25] In discussing the handling of Plaintiff's allegations, the Washington Post described an investigative interview with a former SWBTS security officer:

> ***He said a female student claimed she was raped but later recanted her accusation, saying she was upset at her boyfriend, who had broken up with her.*** He said that the woman had gone to Patterson directly and that Patterson reported it to campus security, after which campus security took it to police.[26]

Dr. Patterson's employment with the Seminary was fully severed on May 30, 2018 and was the subject of national media attention and public discussion.[27]

---

[19] Affidavit of Michael D. Anderson, ¶ 8.
[20] *Deposition of Kevin Ueckert.* 144:6-145:1; 184:12-185:7.
[21] May 23, 2018 SWBTS Statement, attached as Exhibit I.
[22] *Deposition of Gary Loveless*, 35:8-37:4, attached as Exhibit J. *See also Deposition of John Nichols*, 12:4-12:15, 34:6-35:24.
[23] May 24, 2018 Fort Worth Star-Telegram Article, attached as Exhibit K.
[24] *Id*.
[25] May 27, 2018 Washington Post Article, attached as Exhibit L.
[26] *Id*. (emphasis added).
[27] *See* Plaintiff's Third Amended Complaint, ¶¶ 110-116 (Doc. 223).

One of the public statements made about Dr. Patterson's termination, the Loveless Letter, is the subject of this case.[28] The Loveless Letter was authored by Gary Loveless and Susan Pearson.[29] Mr. Loveless' original draft did not mention Plaintiff or her allegations of sexual assault.[30] This section of the Loveless Letter was solely drafted by Ms. Pearson, who, on June 20, 2018, circulated her first draft of the Loveless Letter, which contained the allegedly defamatory content.[31] Mr. Loveless was of the contents of the May 22 Board meeting by trustees,[32] but he did not have knowledge of the allegedly defamatory allegations.[33] Instead, he relied entirely on Ms. Pearson for the accuracy of the statements.[34] Ms. Pearson originally represented that she had information establishing the accuracy of the statements but declined to identify the source of the information.[35]

Ms. Pearson has since affirmed that neither Dr. Patterson, Scott Colter, or anyone else from SWBTS requested Ms. Pearson draft the letter or provided her with details of Plaintiff's sexual assault allegations.[36] Similarly, Mr. Loveless did not have conversations with Dr. Patterson about the Loveless Letter or the details of Plaintiff's sexual assault allegations.[37] Mr. Loveless also did not discuss the May 22 meeting or Plaintiff's allegations with Mr. Colter and has no knowledge of Mr. Colter discussing the details of Plaintiff's allegations with anyone else.[38] Mr. Colter's only

---

[28] *See id*. at ¶ 116; *Deposition of Gary Loveless*, 99:14-99:22, Exhibit 29.
[29] *Deposition of Gary Loveless*, 37:5-41:22, 56:20-61:12; *Deposition of Dale Behan,* 16:3-18:5, attached as Exhibit N.
[30] *Id*. at 56:20-61:12, Exhibit 5.
[31] *Id*. at 37:5-41:22, 56:20-61:12, Exhibit 10.
[32] *Id*. at 28:6-31:16.
[33] *Id*. at 61:13-63:7.
[34] *Id*. at 37:5-41:22, 56:20-61:12
[35] *Id*. at 58:16-60:25.
[36] *Deposition of Susan Oliver Pearson*, 33:2-33:7, 40:10-42:6, attached as Exhibit O.
[37] *Deposition of Gary Loveless*, 55:17-56:4, 117:6-117:17, 117:22-118:18.
[38] *Id*. at 28:6-31:16, 121:16-121:24. *See also id*. at 44:19-44:22 (To the extent relevant, Mr. Loveless also did not discuss the May 22nd Board meeting with Mr. Sharpe).

5

involvement with the Loveless Letter was providing "email addresses" and "[p]rocedural things for the board."[39]

During the course of the Loveless Letter being drafted, Dr. Patterson was receiving extensive medical treatment.[40] Dr. Patterson did not communicate any of the allegedly defamatory statements in the Loveless Letter.[41] Nor did he assist with the Loveless Letter in any way.[42] In fact, he did not become aware of the Loveless Letter until after it was published.[43]

Similarly, Scott Colter was not involved in drafting the Loveless Letter[44] and did not provide information on which the Loveless Letter was based.[45] With respect to the allegedly defamatory statements at issue, Mr. Colter did not have underlying knowledge of these allegations prior to litigation and does not know the source of these statements.[46]

### III.

### ARGUMENTS AND AUTHORITIES

Regarding the circumstances here, where it is alleged that someone is the source of a defamatory statement published by a third party, the Texas Supreme Court has now outlined the requisite elements of such a claim.[47] The elements defined in *Roe v. Patterson* for the first time by the Texas Supreme Court and applicable to this Motion are described below.

---

[39] *Id*. at 115:15-116:6. *See also id*. at 91:12-93:23 ("Procedural things" included the timing of when the Board was informed of the "break her down" email).
[40] Affidavit of Leighton Paige Patterson, ¶ 10,.
[41] *Id*. at ¶ 11.
[42] *Id*. at ¶ 12; *Deposition of Scott Colter*, 109:16-110:1, attached as Exhibit P.
[43] *Deposition of Leighton Paige Patterson*, 165:4-165:13, attached as Exhibit Q; *Deposition of Scott Colter*, 178:15-178:23.
[44] *Deposition of Scott Colter*, 75:20-76:9, 109:16-110:1.
[45] *Id*. at 82:2-82:21, 83:6-85:11.
[46] *Id*. at 85:12-88:11.
[47] Plaintiff's claims are based on the original publication of the Loveless Letter, as opposed to any republication of the Loveless Letter by Dr. Patterson. *See* Plaintiff's Third Amended Complaint, ¶ 116 (Doc. 223); *Roe v. Patterson*, 707 S.W.3d 94, 100 (Tex. 2025) ("Roe did not plead special damages arising from a particular republication of the donor letter, and her defamation claim rests on the statements in the letter as the initial defamatory publication.").

First, after identifying the allegedly defamatory statement, the plaintiff "must show that that the defendant was the source of the statement." *Roe v. Patterson*, 707 S.W.3d at 101. This requires the original defamer to have made an initial defamatory publication. *Id*. at 99 ("The original defamer may be further liable for republication of a defamatory statement, but not without proof of an initial intentional or knowing publication."). "Publication occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is capable of understanding their defamatory import and in such a way that the third person did so understand." *Id*. at 98 (quoting *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017)) (internal quotation marks omitted). Although a publication can be established through direct or circumstantial evidence, "[e]vidence that amounts to mere speculation or surmise does not suffice to survive summary judgment." *Id*. at 101.

Second, if established that the defendant was the source of the statement, the plaintiff must then show fault with respect to the initial publication. *Id*. at 99 (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)) ("Fault is an important element of defamation liability, both in making the publication and with regard to its false and defamatory meaning . . . [A] plaintiff must show the requisite level of intent for an initial publication."). This requires proof that the defendant knew or intended that the defamatory material would be published. *Id*. at 99 ("Roe must show that Colter intended or knew that the defamatory statements in the donor letter would be published.").

Third, the opinion has additional constitutional implications. *Id*. ("When relying on identified content to contend that a defendant was the source of the defamation, a plaintiff must show the requisite level of intent for an initial publication."). Prior to *Roe v. Patterson*, Texas appellate courts were split on whether cases involving private plaintiffs suing nonmedia defendants for speech involving private concerns should apply a strict liability or negligence standard when

7

assessing a defendant's knowledge as to falsity.[48] However, in its opinion, the Texas Supreme Court clarified that a negligence standard must be applied. 707 S.W.3d at 99 ("A defamation plaintiff who is not a public figure must prove that the defendant knew or should have known that the statement was false and defamatory.").

With respect to the claim asserted against Dr. Patterson, Plaintiff cannot establish any of the above elements, either through personal involvement or agency.

### A. Plaintiff Cannot Establish That Patterson Was the Source of the Allegedly Defamatory Statement

Dr. Patterson did not publish the Loveless Letter or participate in its drafting. Accordingly, Plaintiff must demonstrate that Dr. Patterson, either individually or through an agent, published a defamatory statement that served as the source of the alleged defamatory content in the Loveless Letter. Plaintiff has no evidence to support such a showing.

On June 20, 2018, Ms. Pearson circulated the first draft of the Loveless Letter that included specific statements pertaining to Plaintiff's allegations.[49] In this first draft, Ms. Pearson included statements that:

- Plaintiff's "allegations of rape were false";

- Plaintiff "had engaged in consensual sexual activities on at least three separate occasions, and in three separate public buildings with the male student involved";

- Plaintiff "had texted nude pictures of herself to that male student";

---

[48] *Compare Hancock v. Variyam*, 345 S.W.3d 157, 163-64 (Tex. App.—Amarillo 2011), *rev'd on other grounds*, 400 S.W.3d 59 (Tex. 2013) (collecting cases applying strict liability) *with Dickson v. Afiya Ctr.*, 636 S.W.3d 247, 261 (Tex. App.—Dallas 2021) (applying negligence standard), *rev'd on other grounds sub nom.*, *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355 (Tex. 2023); *Fawcett v. Grosu*, 498 S.W.3d 650, 660-62 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (same); *Bedford v. Spassoff*, 485 S.W.3d 641, 648-49 (Tex. App.—Fort Worth 2016) (same), *rev'd in part on other grounds*, 520 S.W.3d 901 (Tex. 2017); *Farias v. Garza*, 426 S.W.3d 808, 816 (Tex. App.—San Antonio 2014, pet. denied) (same), *disapproved of on other grounds*, *In re Lipsky*, 460 S.W.3d 579 (Tex. 2015); and *French v. French*, 385 S.W.3d 61, 73-74 (Tex. App.—Waco 2012, pet. denied) (same).
[49] *Deposition of Gary Loveless*, 37:5-41:22, 56:20-61:12, Exhibit 10.

- Plaintiff "begged Dr. Patterson to not call the police"; and
- Plaintiff needed help to "recant her allegations of rape before she made a similar false statement to the police, which would have resulted in a criminal felony conviction on her record for the remainder of her life."[50]

While the language in the Loveless Letter changed over the course of various drafts, the statements above were substantively identical to the allegedly defamatory statements included in the final Loveless Letter.[51] Ms. Pearson was the sole author of these statements.[52] Neither Dr. Patterson nor Mr. Colter made any defamatory publication that was the source of the allegedly defamatory content in question.[53] In fact, neither discussed any information with Ms. Pearson or Mr. Loveless regarding the details of Plaintiff's sexual assault allegations.[54] Quite simply, there is no evidence that Dr. Patterson or any alleged agent was the source of the allegedly defamatory content. To the contrary, the evidence shows that neither Dr. Patterson nor any alleged agent had any involvement in the statements authored by Ms. Pearson.

The Texas Supreme Court has recognized that circumstantial evidence may, in some cases, support a finding that a defendant was the source of a defamatory publication.[55] Such evidence can include the following: "proof that the defendant made the same defamatory statement to others, that the defendant had unique or personal knowledge of the defamatory content and its details, or that the publishers relied on the defendant to support the truthfulness of the allegedly defamatory statements."[56] But, as shown below, this evidence is not present here.

---

[50] *Id.*
[51] *Compare* Plaintiff's Third Amended Complaint, ¶ 131 (Doc. 223), *and Deposition of Gary Loveless*, Exhibit 29, *with Deposition of Gary Loveless*, Exhibit 10.
[52] *Deposition of Gary Loveless*, 37:5-41:22, 56:20-61:12.
[53] Affidavit of Leighton Paige Patterson, ¶ 10-12; *Deposition of Scott Colter*, 75:20-76:9, 82:2-82:21, 83:6-85:11, 85:12-88:11, 109:16-110:1; *Deposition of Susan Oliver Pearson*, 33:2-33:7, 40:10-42:6; *Deposition of Gary Loveless*, 28:6-31:16, 44:19-44:22, 55:17-56:4, 115:15-116:6, 117:6-117:17, 117:22-118:18, 121:16-121:24.
[54] Affidavit of Leighton Paige Patterson, ¶ 10-12; *Deposition of Scott Colter*, 75:20-76:9, 82:2-82:21, 83:6-88:11, 109:16-110:1; *Deposition of Susan Oliver Pearson*, 33:2-33:7, 40:10-42:6; *Deposition of Gary Loveless*, 28:6-31:16, 44:19-44:22, 55:17-56:4, 115:15-116:6, 117:6-117:17, 117:22-118:18, 121:16-121:24,.
[55] *Roe v. Patterson,* 707 S.W.3d at 101.
[56] *Id.*

### (1) No Evidence That Patterson or Colter Repeated the Allegedly Defamatory Statements to Others

With respect to the allegedly defamatory statements, Dr. Patterson did not make such statements to any person prior to publication of the Loveless Letter.[57] Likewise, during the same period, Mr. Colter did not discuss the allegations contained in the Loveless Letter with anyone else.[58] As a result, the record contains no circumstantial evidence that Dr. Patterson or Mr. Colter was the source of the statements in the Letter.

### (2) The Record Establishes Multiple Alternative Sources for the Allegedly Defamatory Content

In *Mem'l Hermann*, the Texas Supreme Court addressed the issue of proximate cause in the context where the recipient of the defamatory publication was already aware of the defamatory content, had been told the same information by other individuals, and described the information as "kind of everywhere."[59] In these circumstances, the court held that the publication at issue had not proximately caused damages, because the recipient's opinion of the plaintiff had not changed due to the publication.[60]

Although *Mem'l Hermann* addressed proximate cause, the factual circumstances here are analogous with respect to whether Dr. Patterson or any purported agent was the source of the defamatory content at issue. When Ms. Pearson authored the allegedly defamatory material, she could have sourced the material from various individuals or publications. The allegations were initially reported to the Fort Worth Police Department.[61] SWBTS's Director of Security then

---

[57] Affidavit of Leighton Paige Patterson, ¶ 11-12.
[58] *Deposition of Scott Colter*, 83:6-85:11; *Deposition of Gary Loveless*, 121:20-121:24.
[59] *See Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 428 (Tex. 2022) (internal quotation marks omitted).
[60] *Id*. at 427-29 ("A defamation damage award compensates for the '*actual* impact of the defamation'. Such impact must be more than theoretical. The evidence must show 'that people believed the statements and the plaintiff's reputation was actually affected.'") (internal citations omitted).
[61] *Deposition of John Nichols*, 22:24-24:10.

10

disseminated a memorandum to all SWBTS officers identifying Plaintiff and describing her rape allegations.[62] Plaintiff also contacted the Fort Worth Police Department to "withdraw" her allegations and asking that her file be "buried."[63] During the same time in 2015, Plaintiff's sexual assault allegations became widely discussed in the community.[64] As a result, beginning in 2015, FWPD officers, campus security, and the community at large had knowledge of Plaintiff's allegations.

Public discussion of Plaintiff's allegations resurfaced in 2018. They were mentioned by local and national media outlets.[65] They were also discussed in the May 22 Board of Trustees meeting.[66] Although the closed-door executive session was intended to be confidential, trustees engaged in public conversation about Plaintiff's allegations after the meeting.[67]

One of the most prominent sources of information available to Ms. Pearson was the Washington Post article. The allegedly defamatory nature of the Loveless Letter turns on the truth or falsity of Plaintiff's allegations of sexual assault. Before the Loveless Letter was drafted, the Washington Post published an article that called those allegations into question.[68] Relying on its source, a former SWBTS security officer, the Post article described the officer's statements that Plaintiff "recanted her accusation" of rape and inferred that Plaintiffs' allegation was falsely contrived because she was upset at her boyfriend who had broken up with her.[69]

---

[62] *Deposition of John Nichols*, 12:4-12:15, 34:6-35:24, Exhibit 28.
[63] Audio Recording of Plaintiff's Call to Fort Worth Police Department.
[64] *Deposition of Gary Loveless*, 35:8-37:4.
[65] *See* May 24, 2018 Fort Worth Star-Telegram Article; May 27, 2018 Washington Post Article.
[66] *See Deposition of Kevin Ueckert*, 44:18-49:23, 75:3-76:7, 77:8-80:5, 84:11-91:25, 145:2-149:13; Deposition of Shelby Sharpe, 17:16-17:24, 46:16-47:20, *Deposition of Bart Barber*, 73:12-73:19, 116:4-121:7.
[67] *See Deposition of Gary Loveless*, 29:13-31:11.
[68] May 27, 2018 Washington Post Article.
[69] *Id*.

11

Ms. Pearson's first draft of the Loveless Letter was circulated on June 20, 2018.[70] At this time, she had not communicated with Dr. Patterson or Mr. Colter regarding Plaintiff's allegations.[71] Other potential sources of the allegedly defamatory content existed. These included general public discussion of the allegations; officers and campus security personnel with detailed knowledge of Plaintiff's allegations and the closure of the police investigation; and statements published by the Washington Post. Similar to the "whisper campaign" discussed in *Mem'l Hermann,* where any actual impact from an allegedly defamatory publication was merely theoretical, Plaintiff's speculation that Dr. Patterson and/or Mr. Colter was the source of the content in the Loveless Letter - rather than any of these numerous other sources - does not constitute evidence. *Roe v. Patterson*, 707 S.W.3d at 101 ("Evidence that amounts to mere speculation or surmise does not suffice to survive summary judgment.").

### (3) Pearson Did Not Rely on Patterson or Any Alleged Agent for the Veracity of the Allegedly Defamatory Content

Ms. Pearson did not communicate with Dr. Patterson or Mr. Colter about the allegedly defamatory content at any time.[72] As a result, there is no evidence that she relied on either individual as the source or for the veracity of the allegations in the Loveless Letter.

The allegedly defamatory content was circulated on June 20, prior to any discussions with Mr. Colter concerning the Loveless Letter.[73] By that time, Ms. Pearson had already relied on information to support her claims.[74] That information could have come from public discussion of Plaintiff's allegations and/or the Washington Post article, which called into question whether

---

[70] *Deposition of Gary Loveless*, Exhibit 10.
[71] *Deposition of Susan Oliver Pearson*, 33:2-33:7, 40:10-42:6.
[72] *Id*.
[73] *See Deposition of Gary Loveless*, 56:20-60:25, Exhibit 10.
[74] *Id*.

12

Plaintiff had in fact been raped.[75] Analogous to *Mem'l Hermann,* where a recipient could not have altered their opinion based on information already publicly disseminated, Mr. Colter could not have been the source of Ms. Pearson's allegedly defamatory content when that content appeared in the initial draft of the Loveless Letter before any conversations with Mr. Colter concerning the Loveless Letter or any related content had occurred.

### B. Plaintiff Cannot Establish That Patterson Had Knowledge of or Intended Publication of the Allegedly Defamatory Material

Because Plaintiff cannot establish that Dr. Patterson or any purported agent was the source of the allegedly defamatory content, she likewise cannot show that any publication occurred with knowledge or intent that the allegedly defamatory material contained in the Loveless Letter would be published. As to Dr. Patterson, this is confirmed by the undisputed fact that he was unaware of the Letter's existence until *after* its publication.[76]

### C. Plaintiff Cannot Establish Fault Because Patterson Was Unaware of the Alleged Publication

Even if Plaintiff could establish that Dr. Patterson's purported agent supplied false and defamatory content with the intent or knowledge that it would be published, Dr. Patterson cannot, as a matter of law, be held liable for the alleged agent's state of mind. When a claim of liability is based on speech, the First Amendment requires that the allegedly liable party act with a level of fault regarding the purported falsity of the speech; here, Plaintiff must prove that Dr. Patterson acted with negligence as to the speech's truth. See, e.g., *New York Times Co. v. Sullivan,* 376 U.S. 254, 286 (1964) (requiring a showing that individual defendants, who the Court assumed had authorized the publication, had acted with the required level of fault – there, actual malice); *McFarlane v. Esquire Magazine,* 74 F.3d 1296, 1302 (D.C. Cir. 1996) (malice of a non-employee

---

[75] *Id*. at 35:8-37:4; May 27, 2018 Washington Post Article.
[76] *Deposition of Leighton Paige Patterson*, 165:4-165:13; *Deposition of Scott Colter*, 178:15-178:23.

13

agent could not be imputed to principal under New York Times v. Sullivan); *Secord v. Cockburn,* 747 F. Supp. 779, 787 (D.D.C. 1990) (citing *Cantrell*, 419 U.S. 245) ("Actual malice . . . cannot be imputed from one defendant to another absent an employer-employee relationship giving rise to respondeat superior."); *Hancock v. Variyam,* 400 S.W.3d 59, 65 n.7 (Tex. 2013) (establishing negligence as the appropriate level of fault in a defamation suit between private parties).

Here, Plaintiff cannot impose defamation liability on Dr. Patterson based solely on an agency theory. Plaintiff must instead prove that Dr. Patterson *himself* possessed the requisite state of mind at the time the allegedly defamatory publication was made – in other words, that he was negligent as to the truth of the challenged statements in the Loveless Letter.[77] Because Dr. Patterson was unaware of the letter's existence until after it was publicly disseminated,[78] Plaintiff cannot establish that element as a matter of law. *USA Today v. Ryan, LLC*, No. 09-22-00432-CV, 2024 WL 1914792, at *14 (Tex. App.—Beaumont May 2, 2024, pet. denied) (quoting *Scripps Tex. Newspapers, L.P. v. Belalcazar*, 99 S.W.3d 829, 837 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied)) ("Negligent conduct is determined by asking whether the defendant acted reasonably in checking the truth or falsity or defamatory character of the communication before publishing it.") (internal quotation marks omitted).

## CONCLUSION

For the reasons stated in this Motion, Dr. Patterson requests the Court grant summary judgment, dismiss the claims against him, and award any other relief to which he may be entitled.

---

[77] *See* Affidavit of Leighton Paige Patterson, ¶ 14 (Dr. Patterson did not have an employer-employee relationship with any of his alleged agents or the authors of the Loveless Letter while the Letter was being drafted).
[78] *Id.* at ¶ 16.

Respectfully submitted,

**Grau Law Group, PLLC**


 /s/ Jim Grau
**Jim Grau**
State Bar No.: 08306350
*jgrau@graulawgroup.com*

**Travis J. Jones**
State Bar No.: 24101979
*tjones@graulawgroup.com*

500 N. Akard St., Suite 1925
Dallas, Texas 75201
(214) 521-4145 Telephone
(214) 521-4320 Facsimile

**Attorneys for Leighton Paige Patterson**


### CERTIFICATE OF SERVICE

On December 22, 2025, Grau Law Group, PLLC served Leighton Paige Patterson's Motion for Summary Judgment and Brief in Support on the following counsel by CM/ECF, following the Federal Rules of Civil Procedure:

| | |
|---|---|
| Sheila P. Haddock | Susan E. Hutchison |
| Alexander S. Zalkin | Hutchison & Foreman, PLLC |
| Irwin M. Zalkin | 505 Pecan Street, Suite 102 |
| THE ZALKIN LAW FIRM, P.C. | Fort Worth, Texas 76102 |
| 12555 High Bluff Drive, Suite 301 | *sehservice@fightsforright.com* |
| San Diego, California 92130 | Counsel for Plaintiff |
| *sheila@zalkin.com* | |
| *alex@zalkin.com* | |
| *irwin@zalkin.com* | |
| *Counsel for Plaintiff* | |

 /s/ Travis J. Jones
Travis J. Jones

15