EXHIBIT 87

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                      SHERMAN DIVISION

 3   JANE ROE,                     )
                                   )
 4        Plaintiff,               )
                                   )
 5   VS.                           ) CIVIL NO.
                                   ) 4:19-cv-00179-SDJ
 6   LEIGHTON PAIGE PATTERSON,     )
     in his individual             )
 7   capacity, SOUTHWESTERN        )
     BAPTIST THEOLOGICAL           )
 8   SEMINARY,                     )
                                   )
 9        Defendants.              )

10          ----------------------------------

11      ORAL AND VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

12                       CANDI FINCH

13                      MARCH 2, 2021

14          ----------------------------------

15      ORAL AND VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

16   CANDI FINCH, produced as a witness at the instance of

17   the PLAINTIFF, and duly sworn, was taken in the

18   above-styled and numbered cause on MARCH 2, 2021, from

19   9:03 a.m. to 4:41 p.m., before Kimala S. Showers, CSR in

20   and for the State of Texas, reported by machine

21   shorthand, at the law offices of The Grau Law Group,

22   1445 Ross Avenue, Suite 4700, Dallas, Texas, pursuant to

23   the Federal Rules of Civil Procedure and the provisions

24   stated on the record or attached hereto.

25
```



```
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFF:

 3         MS. SHEILA P. HADDOCK
           The Zalkin Law Firm, P.C.
 4         10590 West Ocean Air Drive
           Suite 125
 5         San Diego, California   92130
           Phone: (858) 259-3011
 6         Sheila@zalkin.com

 7    FOR THE DEFENDANT LEIGHTON PAIGE PATTERSON, in his
      individual capacity AND THE WITNESS:
 8
           MR. JIM GRAU
 9         The Grau Law Group
           1445 Ross Avenue
10         Suite 4700
           Dallas, Texas   75202
11         Phone:(214) 521-4145
           JGrau@grawlawgroup.com
12
      FOR THE DEFENDANT SOUTHWESTERN BAPTIST THEOLOGICAL
13    SEMINARY:

14         MR. DAVID M. MACDONALD
           Macdonald Devin, P.C.
15         3800 Renaissance Tower
           1201 Elm Street
16         Dallas, Texas   75270
           Phone:(214) 744-3300
17         DMacdonald@macdonalddevin.com

18    AND

19         MR. MICHAEL ANDERSON
           Kelly Hart & Hallman
20         201 Main Street, Suite 2500
           Fort Worth, Texas   76102
21         Phone:(817) 878-3506
           Michael.Anderson@kellyhart.com
22
      ALSO PRESENT:
23                   Colby Adams, Corporate Representative for
      Southwestern Baptist Theological Seminary
24                   Mark Hendrix, Legal Videographer
                     Robert Pacheco, Esquire Tech. Assistant
25         Jane Roe              , Plaintiff
```



CANDI FINCH
JANE ROE vs SWBTS, ET AL.

March 02, 2021
97

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23        Q.   (BY MS. HADDOCK)   Let's go to Accusation Number
24   2.
25        A.   Okay.
```





1       Q.   It looks -- it's right above that.  So

2   Accusation Number 2 is, Patterson did not handle

3   appropriately an alleged case of sexual assault against

4   an SWBTS student.  So I want to go through this.

5              This is -- my understanding is this is the

6   paragraph -- or these are the paragraphs that are based

7   on the document that we looked at a few minutes ago that

8   was in part -- new and in part, a cut-and-paste of the

9   response that you prepared back in March of 2016,

10  correct?

11      A.   It wasn't the cop- -- no.  The copy-and-paste

12  did not make it in the document at all.  I used the

13  facts from that to compile what ended up in the

14  document.

15      Q.   Okay.  Let's take this -- I -- I want to ask

16  you the question of what is the source of the

17  information that underlies these statements?  So I want

18  to take it line-by-line.

19      A.   Okay.

20      Q.   Patterson called police in response to a female

21  student claiming she had been raped.

22              What is the source of that information?

23      A.   I'm the source.

24      Q.   The accused man admitted to having sexual

25  relations with the woman that said that it was



CANDI FINCH                                                  March 02, 2021
JANE ROE vs SWBTS, ET AL.                                             99

```
 1   consensual.
 2              What is the source of that statement?
 3        A.   I'm the source.
 4        Q.   Did you speak with  John Doe ?
 5        A.   No, ma'am.
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



1

2

3

4

5

6

7

8

9

10      Q.   (BY MS. HADDOCK)   If you could take a look at

11   this first -- this cover page.   This appears, Dr. Finch,

12   to be an e-mail.   Subject says, Final article for

13   review.   This one is coming at 8:38 a.m. to you.

14      A.   Yes, ma'am.

15      Q.   That's a draft.   Let's move to -- I believe

16   it's the third page of the document, the second page of

17   the article with Bates number 364.   Accusation 2 is a

18   little further down the page.   Let's stop there.   And I

19   want to focus in on the response to Accusation Number 2.

20           The first two sentences appear to be the

21   same as in the draft that we looked at a minute ago, but

22   can you read for me the third sentence in the first

23   paragraph under Truth?

24      A.   Yes, ma'am.   It says, The man also produced

25   evidence to the police to that effect.   Is that the one

```
 1    you're asking?

 2         Q.   Yes.

 3              Who added --

 4         A.   Do you want me to repeat it?  Okay.  Sorry.

 5         Q.   Who added this sentence?

 6         A.   I don't remember if I added that or if Sharayah

 7    added that.

 8         Q.   What is the source of that -- of the

 9    information that supports that sentence?

10         A.   I -- I -- I don't remember the source.

11         Q.   My understanding, Dr. Finch, is that you were

12    the source for the answer to this accusation because, as

13    you told us, you were present in the October meeting

14    when this was discussed, correct?

15         A.   Yes.  Yes.  As I said that, I am the source of

16    this entire response.  But when you've asked me where I

17    learned it from, that's what I'm saying, I can't

18    remember.  I can't remember where I learned that from.

19         Q.   And presumably, you learned it sometime between

20    3:30 a.m. and 8:30 a.m.?

21         A.   No, ma'am, that's not correct.

22         Q.   The -- the -- do you understand that this is

23    critical?

24         A.   (Moving head up and down.)

25         Q.   And this is a -- this is a big statement, isn't
```



```
 1   it?
 2                MR. GRAU:  Object, form.
 3        Q.  (BY MS. HADDOCK)  And you're saying here that
 4   this man produced evidence to the police confirming that
 5   the relationship was consensual.
 6                It -- that's what that implies, right, to
 7   that effect?  Is that what you mean?
 8                MR. GRAU:  Object to the form of the
 9   question.
10        Q.  (BY MS. HADDOCK)  What do you mean by this
11   statement?
12        A.  The statement means that we -- we firmly
13   believed at that time that this young man had produced
14   evidence to the police.
15        Q.  To that effect?  To what effect?
16        A.  That they were having consensual relations.
17        Q.  And I'm asking you, what is the basis for your
18   firm belief that he produced evidence to the police
19   confirming a consensual sexual relationship?
20                MR. GRAU:  Object to the form of the
21   question.
22        A.  I -- I -- I'm not trying to be evasive.  I -- I
23   didn't learn it -- if you're asking if I learned it from
24   3:30 to 8:00, I didn't learn it in that time period.
25   But I don't remember if it's from having discussions in
```



CANDI FINCH
JANE ROE vs SWBTS, ET AL.

March 02, 2021
105

1    2016 or if in 2018 when it was brought up again.  I -- I

2    honestly do not remember.  But --

10                                                            --



1

2

3      Q.  (BY MS. HADDOCK)  Okay.  We're focusing in on

4   the statement that you added.  It says, The man also

5   produced evidence to the police to that effect.  I -- I

6   want to clear this up.

7              Is it your testimony that you don't recall

8   whether you or Sharayah added this sentence?

9      A.  Cor- -- what do you mean by added?

10     Q.  Someone typed this sentence into the draft that

11  became the final --

12     A.  Yes.

13     Q.  -- the final thing that got published.

14     A.  Yes.

15     Q.  So who wrote this sentence?

16     A.  I -- I don't remember who wrote that sentence.

17  I believe that I'm the source of information in that

18  sentence.

19     Q.  And I'm going to ask you again, what is the

20  source of the -- of your belief that this is the truth?

21     A.  I cannot remember where I learned that.

22     Q.  Did Dr. Patterson tell you that he had seen

23  photographs that John Doe showed him?

24     A.  I -- I don't remember that -- I -- I don't

25  remember him saying that in the October 8th meeting.



CANDI FINCH                                          March 02, 2021
JANE ROE vs SWBTS, ET AL.                                      108

1          Q.   Did he say that at any other time to you?

2          A.   I don't remember having conversations with

3    Dr. Patterson about this outside of the October 8th

4    meeting or in preparation for.  I -- I -- I don't

5    remember if we had a conversation in 2006 -- '16, excuse

6    me, when the first -- when Stuart Cochran first -- I

7    just don't remember.  I -- I can tell you I did not talk

8    to him from 3:30 a.m. to 8:30 a.m., if that's what

9    you're asking.  We -- we did not discuss this at all in

10   preparation for writing this article.

11         Q.   I'm just struggling with why -- what you're

12   basing this -- and you understand the significance of

13   this statement, do you not?

14         A.   Yes, ma'am.

15         Q.   Okay.  So I'm really trying to understand what

16   you based it on.

17              Did you base it on information that you

18   gained from the police?

19              MR. MACDONALD:  Objection, asked and

20   answered.

21         A.   I wish I could tell you.  I cannot remember why

22   I believed that in 2018, but I did believe that to be

23   true in 2018, or I would not have put it in the article.

24         Q.   (BY MS. HADDOCK)  Understanding the

25   significance of these statements, did you take any steps





1   to confirm what you believed to be true?

2                   MR. GRAU:  Object to form.

3        A.  What -- what do you mean, steps to confirm?

4        Q.  (BY MS. HADDOCK)  Did you speak to the police?

5        A.  In the course of writing this article?

6        Q.  Yes.

7        A.  No, I did not.

8        Q.  The next statement is, Southwestern's Chief of

9   Police confirmed that Fort Worth Police Department was

10  called and responded.

11                  Did you speak to John Nichols?

12       A.  In -- I personally did not in the course of

13  writing this article.

14       Q.  So what is the source of the information that

15  they confirmed that the Fort Worth Police Department was

16  called?

17       A.  I wish I could tell you, but I do not remember.

18       Q.  If there's evidence in this case and there's

19  been testimony that no photographs were ever provided to

20  anyone, does that cause you concern that this statement

21  is not true?

22       A.  It does.

23

24

25



1

2

3

4

5

6

7

8

9

10

11      Q.   It's reflected in some of the documents and

12   some of the media reports and in the testimony that

13   it -- that the -- the documents that were released in

14   connection with the article, that you had consulted

15   legal counsel, and they had been approved for release.

16           Do you recollect that language?

17      A.   I -- I do, yes, ma'am.

18      Q.   Who was the legal counsel that had confirmed

19   that they were avail- -- were ready for release?

20      A.   I don't recall having those conversations

21   before the release.  My memory is that Scott Colter

22   spoke to someone.  I know I had discussions after the

23   release.

24           THE WITNESS:  Am I allowed to say who I

25   talked to?



1                 MR. GRAU:  You can say who, but not what.

2         A.  Okay.  I know I spoke to Shelby Sharpe after

3    the release.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



 1

 2

 3

 4      Q.   Okay.  So I think that that sort of leads me to

 5   the point that I was going to make, was during that

 6   time, Scott Colter was a method of communicating with

 7   the Pattersons, correct?

 8      A.   He could have been, yes.

 9      Q.   Because we know that Scott Colter had a

10   Birchman e-mail address that he was using to communicate

11   with you and Sharayah, his wife, during those days that

12   he was in Germany with the Pattersons, right?

13      A.   I don't -- I don't know at what point he

14   started using his Birchman account.

15      Q.   If we look back the -- I really don't want to

16   spend the time to pull these e-mails back up again.

17      A.   Okay.

18      Q.   But if we look at the e-mails that you said you

19   reviewed before we came here today and helped Scott

20   gather --

21      A.   Yes.

22      Q.   -- they are to his Birchman e-mail address.

23      A.   That is correct.

24      Q.   So to suggest that the Pattersons were

25   unreachable, and you could not have communicated with



1    them, even if you wanted to, that's not an accurate

2    statement, is it?

3         A.   No, what I was saying is, they did not have

4    access to e-mails nor telephones, personally.  And --



CANDI FINCH                                              March 02, 2021
JANE ROE vs SWBTS, ET AL.                                          227

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13      Q.  (BY MS. HADDOCK)  You can answer.  Based on
14   your experience as Sharayah's friend and as Scott's
15   friend, and as someone who's known them for a number of
16   years, would Sharayah have done that if she'd not have
17   Scott's approval and support?
18              MR. GRAU:  Object to the form of the
19   question.
20      A.  I don't know -- I don't know if she would or
21   not.
22      Q.  (BY MS. HADDOCK)  But the fact is she didn't,
23   did she?
24      A.  She didn't what?
25      Q.  She didn't do it without his approval and
```



CANDI FINCH                                    March 02, 2021
JANE ROE vs SWBTS, ET AL.                              228

```
 1   support; she had his approval and support?
 2              MR. GRAU:  Objection, form.
 3        A.  Scott was aware that we were working on it.
 4              Absolutely.
 5        Q.  (BY MS. HADDOCK)  Did Scott ever tell you,
 6   don't do it?
 7        A.  Not that I recall.
 8
 9
10
11
12
13
14
15
16
17
18
19
20        Q.  Once it was released in the morning of May
21   31st, did Dr. Patterson tell you to take it down from
22   the social media posts that had been made?  I know that
23   Sharayah posted it on her Twitter.  You said that you
24   posted it your Twitter.
25              Did he ever tell you to take it down?
```



CANDI FINCH                                                      March 02, 2021
JANE ROE vs SWBTS, ET AL.                                                   229

```
 1      A.   I don't remember talking to Dr. Patterson until

 2  he returned from Germany.

 3      Q.   When he returned from Germany, did he tell you

 4  to take it down?

 5      A.   He did not.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



CANDI FINCH                                    March 02, 2021
JANE ROE vs SWBTS, ET AL.                              241

1                    CHANGES AND SIGNATURE

2   WITNESS NAME:  CANDI FINCH      DATE:  MARCH 2, 2021

3   PAGE LINE      CHANGE          REASON

4   _____

5   _____

6   _____

7   _____

8   _____

9   _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  _____

24  _____

25  _____



CANDI FINCH                                                                    March 02, 2021
JANE ROE vs SWBTS, ET AL.                                                                242

 1          I, CANDI FINCH, have read the foregoing
    deposition and hereby affix my signature that same is
 2  true and correct, except as noted above.

 3

 4                          _____

 5                          CANDI FINCH

 6

 7  THE STATE OF _____)

 8  COUNTY OF _____)

 9

10      Before me, _____, on this day

11  personally appeared CANDI FINCH, known to me (or proved

12  to me under oath or through _____)

13  (description of identity card or other document)) to be

14  the person whose name is subscribed to the foregoing

15  instrument and acknowledged to me that they executed the

16  same for the purposes and consideration therein

17  expressed.

18      Given under my hand and seal of office this

19  _____ day of _____, _____.

20

21

22                          _____

23                          NOTARY PUBLIC IN AND FOR
                            THE STATE OF _____
                            COMMISSION EXPIRES: _____
24

25



1   STATE OF TEXAS)

2   COUNTY OF DALLAS)

3

4

5       I, Kimala S. Showers, Certified Shorthand Reporter

6   duly commissioned and qualified in and for the State of

7   Texas, do hereby certify that there came before me on

8   the 2nd day of March, 2021, at The Grau Law Group,

9   located at 1445 Ross Avenue, Suite 4700, Dallas, Texas,

10  the following named person, to-wit:  CANDI FINCH, who

11  was duly sworn to testify the truth, the whole truth,

12  and nothing but the truth of knowledge touching and

13  concerning the matters in controversy in this cause; and

14  that he was thereupon examined upon oath and his

15  examination reduced to typewriting under my supervision;

16  that the deposition is a true record of the testimony

17  given by the witness.

18              I further certify that pursuant to FRCP

19  Rule 30 (e) (1) that the signature of the deponent:

20              _X_ was requested by the deponent or a

21  party before the completion of the deposition, and that

22  signature is to be before any notary public and returned

23  within 30 days from the date of receipt of the

24  transcript;

25              ___ was not requested by the deponent or



CANDI FINCH                                                      March 02, 2021
JANE ROE vs SWBTS, ET AL.                                              244

1    a party before the completion of the deposition.

2            I further certify that I am neither counsel

3    for, related to, nor employed by any of the parties or

4    attorneys in the action in which this proceeding was

5    taken, and further that I am not financially or

6    otherwise interested in the outcome of the action.

7

8            CERTIFIED TO BY ME on this 12th day of March,

9    2021.

10

11

12   _____
     Kimala S. Showers, Texas CSR 9385
13   Expiration Date:  03/31/2023
     Firm Registration No. 286
14   Esquire Deposition Solutions
     1700 Pacific Avenue
15   Suite 1000
     Dallas, Texas 75201
16   (214) 257-1436

17

18

19

20

21

22

23

24

25

