UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JANE ROE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL NO. 4:19-cv-00179-SDJ |
| | § | |
| LEIGHTON PAIGE PATTERSON in his Individual capacity; and SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY, | § § § § | |
| | § | |
| *Defendants.* | § | |

**LEIGHTON PAIGE PATTERSON'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Dr. Leighton Paige Patterson files this Reply in Support of Motion for Summary Judgment and Brief in Support.

**I.**

**RESPONSE TO OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE**

Plaintiff objected to Exhibit L to Dr. Patterson's Motion for Summary Judgment on the grounds of hearsay and Federal Rules of Evidence 401 and 403. The exhibit, a Washington Post article prior to Dr. Patterson's separation of employment from SWBTS and that calls into question Plaintiff's rape allegations, is supportive that various potential sources of the at-issue statements in the Loveless Letter existed. Plaintiff assumes – without any evidence – that the contents of the letter must have originated with Dr. Patterson or his agent. The summary judgment record, however, shows that the same information appeared in a newspaper article, demonstrating an independent, non-defendant source of the allegedly defamatory statements. The existence of other

1

potential sources of this content, such as the Washington Post article, is therefore probative, relevant, and admissible. *See* Fed. R. Evid. 401-403.

The article also is not inadmissible hearsay. The Washington Post article is not offered to establish the truth of Plaintiff's allegations. Rather, it is to show that information contradicting Plaintiff's claim of exclusive attribution was publicly communicated prior to the drafting of the Letter. *See Jauch v. Corley*, 830 F.2d 47, 52 (5th Cir. 1987) (newspaper article was admissible when intended to prove that allegedly defamatory statements were made).[1]

## II.

## **REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**A. Plaintiff's conclusory allegations cannot establish circumstantial evidence where multiple independent sources existed.**

Plaintiff does not rely on direct evidence that Dr. Patterson or anyone else supplied defamatory information to Ms. Pearson with the knowledge or intention that it would be republished – because there is none. Instead, Plaintiff seeks to avoid her evidentiary burden by arguing that summary judgment is generally inappropriate where motive or intent is at issue, and by relying on conclusory and unfounded assumptions as purported circumstantial evidence. Neither argument has merit.

Under Texas law, evidence of the requisite mental state is required to defeat summary judgment. *See Mo-Vac Serv. Co., Inc. v. Escobedo*, 603 S.W.3d 119 (Tex. 2020) (intent element for intentional-injury claim); *Reed Tool Co. v. Copelin*, 689 S.W.2d 404 (Tex. 1985) (same); *Bevers v. Gaylord Broad. Co., L.P.*, No. 05-01-00895-CV, 2002 WL 1582286, at *7–8 (Tex. App.—Dallas July 18, 2002, pet. denied) (intentional conduct element of IIED claim).

---

[1] *See also McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008) (letter containing allegedly defamatory statements did not include inadmissible hearsay); *Reyes v. N. Tex. Tollway Auth. (NTTA)*, 186 F. Supp. 3d 621, 630 (N.D. Tex. 2016), aff'd, 861 F.3d 558 (5th Cir. 2017) (news articles proving statements were made were relevant and admissible).

Procedurally, although the Fifth Circuit has observed that summary judgment may be "less fashionable" when state of mind is at issue,[2] courts nevertheless evaluate intent and knowledge like any other element and require the non-moving party to come forward with competent summary judgment evidence showing a genuine issue of material fact.[3] Accordingly, even in cases involving motive or intent, summary judgment is appropriate where "the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.["4]

Because Plaintiff's defamation claim rests solely on self-serving speculation and unsupported conclusions, summary judgment is warranted. *Roe v. Patterson*, 707 S.W.3d 94, 101 (Tex. 2025) ("Evidence that amounts to mere speculation or surmise does not suffice to survive summary judgment, for this or any other tort."). Texas precedent supports this result.

In *Gardiner*, the plaintiff obtained a jury verdict on defamation against his former employer after his co-workers came to understand that the plaintiff was terminated for allegedly stealing from the company. *Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.). The plaintiff argued that information regarding his firing must have come from either of the two employees involved in that termination, since no one else knew what happened. *Id.* at 399–400. However, there was no direct evidence that the coworkers learned this information from these two employees, *id*. at 397,[5] and the information could have come from

---

[2] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991).
[3] *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996).
[4] *Int'l Shortstop*, 939 F.2d at 1266 (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–57 (1986)) (The nonmoving party must "set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial."). While "unfashionable," federal courts have granted and affirmed summary judgment based on the defendant's mental state when appropriate. *See, e.g., Choe v. Bank of Am., N.A.*, 605 Fed. Appx. 316, 323–24 (5th Cir. 2015); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1327-28 (5th Cir. 1996); *Clower v. Wells Fargo Bank, N.A.*, No. 2:07-CV-510-TJW-CE, 2011 WL 13196510, at *9 (E.D. Tex. Sept. 12, 2011), report and recommendation adopted, No. 2:07-CV-510-TJW-CE, 2011 WL 13196511 (E.D. Tex. Sept. 30, 2011); *Sparks v. Lockheed Martin Aerospace Corp.*, No. H-97-3995, 1999 WL 438559, at *14 (S.D. Tex. Apr. 13, 1999).
[5] ("Neither Fargo, Young, Kirby, Lobo, nor Farnos, identified Beirne, Varga, or anyone else as the source of the information, whether in direct testimony or through Gardiner.").

rumors and gossip among store employees, especially given the circumstances of how plaintiff was removed from the store's floor. *Id*. at 398.[6] The First Court of Appeals affirmed that "[f]or circumstantial evidence to raise a fact issue, a reasonable person must be led by the evidence to conclude that the existence of the fact is more reasonable than its nonexistence," and "where two inferences are equally likely, neither inference may be drawn." *Id*. at 397.[7] Finding no evidence of defamation, the court reversed and rendered judgment against the plaintiff, because the evidence was equally likely that the plaintiff's injuries occurred due to rumors and gossip as opposed to statements by the store employees. *Id*. at 400.

The analysis in *Gardiner* applies with even greater force here. There is no direct evidence that Dr. Patterson or anyone associated with him was the source of allegedly defamatory material in the Loveless Letter, and the record reflects multiple independent potential sources for the statements.[8] As in *Gardiner*, rumors and gossip concerning Plaintiff's allegations circulated after the allegations were made.[9] Her identity, the identity of the alleged assailant, and the substance of her allegations were disclosed to at least 30 SWBTS students and employees.[10] At least one SWBTS security officers expressed doubts about Plaintiff's allegations, and the Washington Post

---

[6] ("Diane Fargo, the only one of the four actually called as a witness at trial, testified it was all over the store Gardiner took money out of the register. She stated she could not remember exactly who told her, or where they heard it from, but everyone was talking about it, and Gardiner was not the one who told her. Fargo also testified she knew Gardiner had taken money by Varga's actions of taking him off the floor, because that was the only time anything like that was ever done.")

[7] (citing *Smith v. Tennessee Life Ins. Co.*, 618 S.W.2d 829, 834 (Tex. App.—Houston [1st Dist.] 1981, no writ) and *Litton Indus. Products, Inc. v. Gammage*, 668 S.W.2d 319, 324 (Tex. 1984)).

[8] It is also noteworthy that defamation requires a false statement of fact, and a person lying or telling untruths does not necessarily predicate a finding that those statements came from someone else. It is equally likely that, based on nondefamatory information available to Ms. Pearson, she could have, on her own, made the allegedly defamatory statements at issue.

[9] *See Deposition of Gary Loveless*, 35:8-37:4.

[10] Jane Doe's Response in Opposition to Defendant Leighton Paige Patterson's Motion for Summary Judgment and Brief in Support, Exhibit 92, ¶ 99 (Doc. 516) ("Plaintiff's Response"); *Deposition of John Nichols*, 34:6-35:24.

published those doubts nationally.[11] Ms. Pearson could have relied on any of this publicly available information when drafting the Loveless Letter.

Further, the full 40-member SWBTS board attended a meeting in which Mr. Sharpe's investigation into Plaintiff's allegations, conducted in his capacity as SWBTS' attorney, was discussed.[12] Contrary to Plaintiff's assertion, Dr. Patterson denies that any defamatory statements were made during the meeting. *See California Commercial Inv. Group, Inc. v. Herrington*, No. 05-19-00805-CV, 2020 WL 3820907, at *7-8 (Tex. App.—Dallas July 8, 2020, no pet.) (statement during police interview that plaintiff had stolen property, based on facts supporting conclusion, were subjective opinion rather than actionable statement of fact). However, information discussed during the meeting could have been later repeated or transformed by board members into defamatory material relied on by Ms. Pearson.

Overall, various sources of the Loveless Letter's content existed, and Plaintiff has not shown that the information must have originated through any connection to Dr. Patterson. As a result, no circumstantial evidence exists linking Dr. Patterson to the Letter. *Gardiner*, 859 S.W.2d at 397 ("where two inferences are equally likely, neither inference may be drawn.").

**B. Shelby Sharpe's conduct was not defamatory as a matter of law.**

Specific to Mr. Sharpe, Plaintiff alleges defamation liability based on statements made during a closed-door Board meeting that was intended to be confidential and privileged and that involved disclosure of SWBTS' investigation into Plaintiff's claims in response to Plaintiff's threatening legal action against the Seminary. This allegation is more than tenuous; it is untenable here and fails as a matter of law.

---

[11] May 27, 2018 Washington Post Article.
[12] *Deposition of Kevin Ueckert*, 70:17-71:17.

Plaintiff concedes that "[n]one of the purported authors of the Loveless/Donor Letter were at the May 22, 2018 meeting."[13] Because none of the purported authors attended the meeting, Mr. Sharpe could not have communicated any defamatory information to them there. Accordingly, the record contains no evidence that Mr. Sharpe was the source of the Loveless Letter.[14]

Further, even if Mr. Sharpe's statements during the meeting were later conveyed by board members to Ms. Pearson in some manner, no knowing or intended publication occurred. The meeting was intended to involve confidential attorney-client communications regarding Dr. Patterson's employment and the merits of legal allegations asserted against SWBTS by Plaintiff's then attorney.[15] At the outset of the meeting, SWBTS' attorney advised the participants "that all of the information discussed during the meeting was confidential and protected by the attorney-client privilege."[16] Further admonishments included that "[t]he Trustees were instructed not to share any of the information discussed during the executive session with any individual who was not a Trustee."[17]

Given the timing and confidential nature of the meeting, there is no dispute that Mr. Sharpe's statements were made without the knowledge or intent that they would be incorporated into a letter that: (1) arose from Dr. Patterson's termination eight days later; (2) had not yet been drafted; and (3) was authored by individuals who were not present at the meeting.

---

[13] Plaintiff's Response, p. 16.
[14] Mr. Sharpe was not involved in actually drafting the Loveless Letter. Plaintiff's Response, Exhibit 26 ("[Mr. Sharpe] and I both readily acknowledged that his hands need to stay completely away from this letter.").
[15] *See* Stuart Cochran Letter; *Deposition of Kevin Ueckert*, 44:18-49:23, 75:3-76:7, 84:11-91:25, 144:6-149:13, 184:12-185:7; *Deposition of Shelby Sharpe*, 17:16-17:24, 46:16-47:20; *Deposition of Bart Barber*, 73:12-73:19, 116:4-121:7; Affidavit of Michael D. Anderson.
[16] Affidavit of Michael D. Anderson, ¶ 5.
[17] *Id*.

### C. Scott Colter did not provide or publish any defamatory statements.

Plaintiff has not directed the Court to any evidence in the record that Mr. Colter provided defamatory material for publication.[18] Instead, Plaintiff's allegations primarily rely on Mr. Colter's general awareness of the Letter, such as being copied on email correspondence, providing contact information to individuals supporting Dr. Patterson, and discussing the timing of public support in relation to legal efforts. None of this conduct supports defamation liability. *Roe v. Patterson*, 707 S.W.3d 94, 101 n. 19 (Tex. 2025) ("Mere presence for the publication of a defamation . . . will not cause liability to attach."); *Lakireddy v. Soto-Vigil*, No. A138675, 2014 WL 1478693, at *7 (Cal. Ct. App. Apr. 16, 2014) (requiring responsible role in publication of defamatory material and collecting cases holding that "mere participation in an enterprise," "distribution of a publication," and "financial contribution to a publication" are insufficient for liability).

Plaintiff further claims that Mr. Colter's attendance at the May 22, 2018 meeting provided him with unique knowledge of allegedly defamatory content and its details, and, therefore, he must have been the source of the statements contained in the Loveless Letter.[19] The presence of approximately 40 board members at that meeting negates any claim that Mr. Colter's attendance was unique.

In addition, Plaintiff relies on the mere existence of conversations between Ms. Pearson and Mr. Colter. Importantly, the timing of these conversations – after the Loveless Letter was initially drafted on June 20 – refutes Plaintiff's causation theory. Further, the emails themselves confirm that the communications involved only non-defamatory information.

---

[18] Plaintiff tangentially references Mr. Colter forwarding the letter but has never asserted a claim for republication, and any such argument has been waived. *See* Memorandum Opinion and Order, p. 43 n. 19 (Doc. 462); *Roe v. Patterson*, 707 S.W.3d at 100 ("Roe did not plead special damages arising from a particular republication of the donor letter, and her defamation claim rests on the statements in the letter as the initial defamatory publication.").

[19] Plaintiff's Response, p. 9.

In Plaintiff's Exhibit 37, Ms. Pearson questions when the SWBTS Board was made aware of the "break her down" email. She then references a call with Mr. Colter regarding the timing of the Board's awareness, confirming that the Board knew of the email on May 22. The following day, in Exhibit 38, Ms. Pearson again refers to the same conversation. As such, the substance of the conversation between Ms. Pearson and Mr. Colter is clear – namely, the timing of the board's knowledge of email – and it is unrelated to the subject of Plaintiff's defamation claim.

Plaintiff further claims that the above-referenced exhibits establish that defamatory portions of the Loveless Letter were added as a result of Ms. Pearson's conversations with Mr. Colter.[20] First, Plaintiff cites the wrong exhibit for the version of the draft Loveless Letter quoted in her Response.[21] Second, Plaintiff references additions to the Letter but omits the two subsequent paragraphs that were added and that relate to the timing of the Board's knowledge of the "break her down" email – consistent with the actual content of that conversation.[22] Third, Plaintiff's own evidence confirms that changes to the allegedly defamatory material did not involve Mr. Colter. As shown in Plaintiff's Exhibit 36, two nights prior to the version of the Letter quoted in Plaintiff's Response, Ms. Pearson refers to a conversation with her "writer friend" and to updates made to the Letter based on this conversation. While the substance of Pearson's version of the Letter remained the same since its origination, the conversation with Ms. Pearson's writer friend appears to have resulted in editorial and stylistic changes.[23]

---

[20] *Id*. at p. 8 ("Directly following Oliver's telephone conversation with Colter, she added a paragraph . . .").

[21] *Compare,* Plaintiff's Response, Exhibit 37, *with*, Plaintiff's Response, Exhibit 40.

[22] Plaintiff's Response, Exhibit 40 ("The statement issued by the Board of Trustees on May 23rd is evidence that the Trustee Board accepted Dr. Patterson's explanation and appropriately exonerated him fully of all matters associated with the 2015 Southwestern event. It is obvious from Mr. Ueckert's June 1 statement that discussion of that email and the 2015 Southwestern event resurfaced at your May 30th meeting, although no direct reference was made to it in your statement of that day. Mr. Ueckert's decision to *release neither the full email nor the complete explanation provided by Dr. Patterson,* but rather to release only the three-word phase, "breaking her down," can only be viewed as one of the most perfidious, dishonorable, and manipulative ploys ever conceived to disseminate false and deceptive information.").

[23] *Compare*, Plaintiff's Response, Exhibit 26, *with*, Plaintiff's Response, Exhibit 40.

8

### D. Dr. Patterson cannot be liable absent fault.

Plaintiff alleges that Dr. Patterson and others generally knew or should have known that the statements in the Loveless Letter were false. This argument ignores that a *publisher's fault* must be determined at the time of publication. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Plaintiff offers no evidence that Dr. Patterson made any publication on which the Loveless Letter relied. Accordingly, fault cannot be determined based on his own statement. Plaintiff likewise cites no authority supporting the attribution of an agent's fault to Dr. Patterson as a principal. Such attribution is not constitutionally permitted, and the absence of fault precludes any liability determination against Dr. Patterson.[24]

The general rule in defamation law is that fault must be determined as to each individual defendant and ordinarily cannot be imputed to another.[25] A limited exception exists in the context of employer-employee relationships giving rise to *respondeat superior*.[26] However, imputing fault in the context of agency relationships is not constitutionally permitted. *McFarlane*, 74 F.3d at 1302 (malice of a non-employee agent could not be imputed to principal under *New York Times v. Sullivan*); *Masson v. New Yorker Magazine, Inc.*, 832 F. Supp. 1350, 1370 (N.D. Cal. 1993), aff'd, 85 F.3d 1394 (9th Cir. 1996) ("The Court finds that general agency rules do not apply in the constitutional context."); *Secord v. Cockburn*, 747 F. Supp. 779, 787 (D.D.C. 1990) (citing *Cantrell*, 419 U.S. 245) ("Actual malice . . . cannot be imputed from one defendant to another absent an employer-employee relationship giving rise to *respondeat superior*."); *Murray v. Bailey*,

---

[24] *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) ("Fault is a constitutional prerequisite for defamation liability.").
[25] *New York Times Co. v. Sullivan*, 376 U.S. at 286; *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1302 (D.C. Cir. 1996) (Referring to *New York Times v. Sullivan*: "the Court refused to impute to the individuals as principals any information in the minds of persons they authorized to act as their agents in the matter.").
[26] *See, e.g.*, *Cantrell v. Forest City Pub. Co.*, 419 U.S. 245, 253-54 (1974) (holding newspaper publisher vicariously liable for employee's defamatory story).

613 F. Supp. 1276, 1281 (N.D. Cal. 1985) ("The stringent standards required by the First Amendment make application of an agency theory inappropriate.").

Ultimately, for Dr. Patterson to be liable for the acts of an agent, he must have actively participated in a defamatory publication with the requisite degree of fault.[27] There is no evidence in the record that this occurred, and summary judgment is therefore appropriate regardless of any alleged conduct by an agent.

### E. Plaintiff's ratification arguments were previously rejected and are barred.

Plaintiff attempts to relitigate the issue of ratification, relying on Dr. Patterson's private email to Mr. Loveless and the Medford Podcast. The Court previously granted summary judgment on these issues,[28] and that ruling was not disturbed on appeal by the Fifth Circuit.[29] To the extent necessary, Dr. Patterson reiterates that he could not have ratified statements by non-agents Gary Loveless and Susan Pearson, *Mulvey v. Mobil Producing Tex. & New Mexico Inc.*, 147 S.W.3d 594, 606 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied), and that silence and private emails do not support ratification, *Sw. Bell Tel. Co. v. Wilson*, 768 S.W.2d 755, 765 (Tex. App.—

---

[27] *AdvanFort Co. v. Mar. Executive, LLC*, No. 1:15-CV-220, 2015 WL 4603090, at *7 (E.D. Va. July 28, 2015) (citing *Cantrell*, 419 U.S. at 252-54 ("With respect to the agency theory, it is well established that actual malice must be proved with respect to *each* defendant."); *Masson*, 832 F. Supp. at 1370 ("The Supreme Court has clearly held that the defendant must act with the requisite mental state."); *Secord v. Cockburn*, 747 F. Supp. at 787 (citing *St. Amant v. Thompson,* 390 U.S. 727, 730 (1968) ("Actual malice must be proved separately with respect to each defendant."); *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1446 (8th Cir. 1989) ("The existence of reckless disregard must be proved with respect to each defendant.") (citing *Cantrell*, 419 U.S. 245); *Murray v. Bailey*, 613 F. Supp. 1276, 1281 (N.D. Cal. 1985) (citing *Hoffman v. Washington Post Co.*, 433 F. Supp. 600, 605 (D.D.C. 1977), aff'd, 578 F.2d 442 (D.C. Cir. 1978)) ("Plaintiff cannot recover in this action without proving each defendant acted with actual malice as to each purported defamation."); *Phoenix Newspapers, Inc. v. Church*, 24 Ariz. App. 287, 302 (1975) ("[U]under Times v. Sullivan, apart from the application of the doctrine of Respondeat superior, an individual defendant cannot be held liable unless the jury finds that the individual himself has been actuated by actual malice (knowledge of falsity).").

[28] Memorandum Opinion and Order, p. 40-43 (Doc. 462).

[29] Summary judgment was vacated as to Dr. Patterson's potential liability for the Loveless Letter based on Mr. Colter's acts as his alleged agent. Memorandum Opinion and Order (Doc. 500); *Roe v. Patterson*, No. 23-40281, 2024 WL 1956148, at *2 (5th Cir. May 3, 2024), certified question accepted (May 10, 2024), certified question answered, 707 S.W.3d 94 (Tex. 2025) ("We are persuaded that the summary judgment evidence creates a genuine issue over whether Colter was indeed acting as Patterson's agent and 'for the accomplishment of the objective of the agency,' during his involvement with the letter. We would therefore decline to affirm the district court's judgment on those grounds.") (internal citations omitted).

Corpus Christi–Edinburg 1988, writ denied), and incorporates by reference the ratification arguments in Docs. 241 and 301.

                                                Respectfully submitted,

                                                **Grau Law Group, PLLC**

                                                 /s/ *Jim Grau*
                                                **Jim Grau**
                                                State Bar No.: 08306350
                                                *jgrau@graulawgroup.com*

                                                **Travis J. Jones**
                                                State Bar No.: 24101979
                                                *tjones@graulawgroup.com*

                                                500 N. Akard St., Suite 1925
                                                Dallas, Texas 75201
                                                (214) 521-4145 Telephone
                                                (214) 521-4320 Facsimile

                                                **Attorneys for Leighton Paige Patterson**

## **CERTIFICATE OF SERVICE**

      On January 26, 2026, Grau Law Group, PLLC served Leighton Paige Patterson's Reply in Support of Motion for Summary Judgment and Brief in Support on the following counsel by CM/ECF, following the Federal Rules of Civil Procedure:

| | |
|---|---|
| Sheila P. Haddock | Susan E. Hutchison |
| Alexander S. Zalkin | Hutchison & Foreman, PLLC |
| Irwin M. Zalkin | 505 Pecan Street, Suite 102 |
| THE ZALKIN LAW FIRM, P.C. | Fort Worth, Texas 76102 |
| 12555 High Bluff Drive, Suite 301 | *sehservice@fightsforright.com* |
| San Diego, California 92130 | Counsel for Plaintiff |
| *sheila@zalkin.com* | |
| *alex@zalkin.com* | |
| *irwin@zalkin.com* | |
| *Counsel for Plaintiff* | |

                                         */s/ Travis J. Jones*
                                         Travis J. Jones